GEORGE L. SWINDELL v. TOWN OF BELHAVEN.

(Filed 21 February, 1917.)

1. **Municipal Corporations—Contracts—Debts — Necessary Expenses — Constitutional Law—Statutes.**

Our Constitution, Art. VII, sec. 7, authorizes municipal corporations to contract debts for their necessary expenses, and to make provision therefor without the approval of the voters therein, subject, however, to legislative control.

2. **Same—Electric Lights—Water-works—Sewerage — Bond Issues — Special Statutes.**

The right given by the Constitution to municipalities to contract debts for their necessary expenses without the approval of the voters therein has been construed by our Supreme Court to include within the meaning of such words, expenses for acquiring and installing electric lights, water-works, and sewerage; and by the adoption of the same words in the act of 1915, ch. 131, sec. 1, it will be presumed that the Legislature was aware of the former decisions and had adopted the same meaning, and bonds issued by a municipality for such purposes are regarded as for necessary purposes, and their validity does not depend upon the approval of the voters, unless required by its charter or other special or local legislation.

3. **Statutes—Interpretation — Repealing Statutes — Electric Lights—Water-works—Sewerage—Municipal Corporations—Cities and Towns.**

The provision in chapter 131, section 1, Laws 1915, permitting municipalities to issue bonds for necessary expenses without the approval of their voters, that the act shall not be construed to repeal or supersede

any other statutes, refers to acts of only local application; and the act of 1911, ch. 86, sec. 1, subdivisions (a) and (b), requiring the approval by the voters of the proposition of acquiring and installing electric lights, water, and sewerage by a municipality, is inconsistent with the later act, which in this respect repeals the former one.

APPEAL from restraining order rendered by *Whedbee, J.*, at chambers, 23 November, 1916; from BEAUFORT.

This action is brought to enjoin the defendant town and its commissioners from issuing $60,000 in bonds for the establishment of a system of electric lights, water-works, and sewerage. The defendant town has a population of 3,500 persons, and according to the findings of the board of commissioners it has no sufficient light system, so that it is frequently left in total darkness; it has no water supply system, in consequence of which its citizens suffer great loss and inconvenience; and the health of its citizens is seriously menaced for want of a sewerage system. It is found that such things are a necessary expense without which the municipality is seriously embarrassed in its health and comfort, as well as greatly retarded in its development.

Upon the final hearing of the restraining order, *Whedbee, J.*, on 23 November, 1916, rendered the following judgment:

"It is found as a fact by the court that the system of electric lights, water-works, and sewerage proposed to be installed in the town of Belhaven by the defendants, in the manner set out in the resolutions of the board of aldermen of the town of Behaven, are necessary expenses for the said town; it is found as a fact that the bonds, in the sum of $60,000, proposed to be issued by the defendant town are to be issued for the purpose of providing the necessary and proper funds for the acquiring and installing the said systems of electric lights, water-works, and sewerage; it is found as a fact that the present assessed value of real and personal property in the said town of Behaven is as alleged in the complaint and admitted in the answer, and that the present taxes imposed by the said town are as alleged in the complaint and admitted in the answer; it is found as a fact that the present bonded indebtedness of said town is $15,000; (it is found as a fact that said town has no floating indebtedness that will not be paid off by taxes now due said town; it is found as a fact that the present population of said town is about 3,500); it is found as a fact that the issuance of said $60,000 of bonds of the said town has been duly and regularly authorized by the board of aldermen of said town, and that the said bonds, when issued in accordance with the resolutions of the defendant town, or board of aldermen thereof, will constitute valid and binding obligations of the said town."

Thereupon his Honor dissolved the restraining order and dismissed the action. Plaintiff appealed.

*Small, McLean, Bragaw & Rodman for plaintiff.*
*John G. Tooly, Harry McMullan for defendants.*

BROWN, J.   It is contended that there is no constitutional or statutory authority for the issue of the bonds.   We think there is both.   It is well settled that under Art. VII, section 7, of the Constitution, counties, cities, and towns and other municipal corporations are given authority to contract debts for the necessary expenses thereof, without the sanction of a majority of the qualified voters.   That section indirectly, but explicitly, permits the exercise by municipal corporations of the power of making ·provision for necessary expenses, free from the restraints imposed in other cases.   Connor and Cheshire on Const., 315; *Gardner v. New Bern,* 98 N. C., 228; *Jones v. New Bern,* 152 N. C., 64.

It is not necessary to submit the question to the qualified voters. *Smathers v. Comrs.,* 125 N. C., 487; *Evans v. Comrs.,* 89 N. C., 154; *McKethan v. Comrs.,* 92 N. C., 243; *Swinson v. Mount Olive,* 147 N. C., 611.

But the section does not confer unlimited power upon municipalities to contract debts *ad libitum* independent of the control of the General Assembly.   *Wharton v. Greensboro,* 146 N. C., 356; *Burgin v. Smith,* 151 N. C., 561.

Not only is there constitutional authority for the contemplated issue of bonds, but there is direct legislative sanction.   Chapter 131, section 1, of the Public Laws of North Carolina, 1915, provides: "That for the purpose of securing money for any purpose or purposes involving a necessary expense, including the funding or refunding of obligations theretofore issued for any such purpose, the board of commissioners, council, or other governing body of any city or town is hereby authorized to issue bonds of such municipality to such an amount as said board of commissioners, council, or other governing body shall by resolution direct, said bonds to be of such form and tenor and denomination, and to bear interest at such rate, not exceeding 6 per centum per annum, and the principal thereof to be payable at such time or times, not exceeding thirty years from the date thereof, and such interest and principal to be payable at such place or places within or without this State as said board of commissioners, council, or other governing body shall by resolution direct."

There is no requirement that a debt to be contracted for necessary expenses be approved by a majority of the qualified voters.   That no such restriction was intended is made perfectly manifest by section 2 of the statute, wherein it is provided, "that in order to secure money for *any other municipal purpose* or purposes, including the funding or refunding of obligations issued for *any other municipal purpose,*" bonds may be issued, provided the issuance be approved by the majority of the qualified voters.

In the charter of Belhaven there are no restrictions upon the power to contract debts for necessary municipal expenses and no requirement that the proposition be approved by the qualified voters. Therefore, the principle that where there is a statute of general application throughout the State, and another special to a given locality, passed on the same subject, and the two are necessarily inconsistent, the special statute will prevail, has no application here. *Branham v. Durham,* 171 N. C., 196.

But it is contended that the words "necessary expenses" in the act of 1915 refer only to the current annual expenses of conducting the municipal government and do not embrace such expenditures as those made for electric lights, water-works, and sewerage, these being mere luxuries. They might have been so regarded many years ago, in their incipiency, but the luxuries of one generation have become the necessities of another. What would have sufficed for our ancestors would not begin to meet the needs of the twentieth century. These things naturally follow in the wake of an advancing civilization.

This contention of the plaintiff is conclusively answered by the fact that the words "necessary expenses" used in the statute of 1915 are identical with those in the Constitution, Art. VII, section 7, and are used in the same connection and in similar purport. These words have been construed and applied by this Court in a great many unanimous decisions, and the meaning given to them was well known to the General Assembly. It must be, therefore, conclusively presumed that the words were used as interpreted and applied by this Court.

The decisions are too numerous to cite, but may be found in the valuable work of Connor and Cheshire on the Constitution, page 318. The substance of all of them is to the effect that necessary expenses do not mean expenses incurred for purposes absolutely necessary to the existence of the municipality, and that answers the plaintiff's contention as to the meaning of the statute. Without extended citation, it is proper to note that the very things provided for in the resolution of the board of commissioners have all been declared legitimate necessary expenses of cities and towns. Water-works and electric lights: *Fawcett v. Mount Airy,* 134 N. C., 125, overruling *Edgerton v. Water Co.,* 126 N. C., 93; *Mayo v. Washington,* 122 N. C., 5; *Charlotte v. Shepard,* 120 N. C., 412; *Thrift v. Elizabeth City,* 122 N. C., 31; *Davis v. Fremont,* 135 N. C., 538; *Bain v. Goldsboro,* 164 N. C., 103. Water-works plant and sewerage system: *Greensboro v. Scott,* 138 N. C., 181; *Bradshaw v. High Point,* 151 N. C., 517; *Underwood v. Asheboro,* 152 N. C., 641.

These decisions have been cited and approved so frequently that they have become a part of the warp and woof of our jurisprudence.

It is further contended that the act of 1911 authorizes the establishment by municipalities of water-works and sewerage, electric lights and gas plants, but requires that the debt contracted therefor be approved

by popular vote (Pub. Laws 1911, ch. 86, sec. 1, subdiv. a and b), and that this statute is not repealed or modified by the act of 1915. It is true, there is such statute, but the contention that it is not modified by the act of 1915 is untenable.

It is true that the act of 1915 declares, "This act shall be in addition to any and all other statutes authorizing or permitting the issuance of bonds, and shall not be construed to repeal or supersede any of such statutes."

It is evident that the statutes referred to in the section are those "special statutes" applicable to particular cities and towns, referred to in *Branham v. Durham, supra,* wherein it is held that such special statutes applicable to a given locality are not repealed by a statute of general application throughout the State solely because the two are inconsistent.

If it was not intended that the act of 1915 should supersede that of 1911 then there was no use in enacting it, for both acts cover exactly the same ground. It is evident that for some good reason the Legislature of 1915 saw fit to eliminate these important municipal necessities, as defined by this Court, from the effect of the act of 1911. That act makes no distinction between debts contracted for necessary expenses and those contracted for other purposes.

The act of 1915 makes that distinction very plainly. Section 1 provides that bonds may be issued for necessary expenses without approval by a majority of the qualified voters, and fixes rate of interest and the maturity of the bonds.

Section 2 provides for issuing bonds for "any other municipal purpose" and requires the proposition to be submitted for approval to the qualified voters.

The contention that the "necessary expenses" in the act of 1915 refer only to the current annual expense of running the municipal government is refuted by the fact that the act provides for issuing thirty-year bonds for the necessary expenses, and no municipal authorities would issue thirty-year bonds to tide over a mere temporary stringency, which is generally relieved when the taxes are paid into the treasury.

Long-term bonds are issued for permanent and substantial acquisitions and not to supply mere temporary wants. That the two statutes are utterly inconsistent in their leading features and cannot stand together is manifest from a cursory reading. The act of 1915 draws a distinction between bonds for necessary expenses and those for other purposes, while that of 1911 does not. The act of 1915 provides for bonds, the maturity of which must not exceed thirty years, while the limit in the act of 1911 is fifty years. The act of 1915 provides for public advertisement and competitive bidding and that the bonded debt

shall not exceed 10 per cent of assessed valuation of real and personal property. The act of 1911 contains neither of these valuable safeguards.

There are other differences which it is unnecessary to point out.

The two statutes, being utterly inconsistent, cannot stand together. That being so, the last enactment must prevail to the extent that they are repugnant. This is true of acts passed at same session of the General Assembly. *Branham v. Durham, supra.* But conceding that the two statutes may stand together, then the commissioners of Belhaven could proceed under either statute and the bonds would be valid. The decision we have arrived at, in our opinion, is not only supported by reason and overwhelming authority, but tends to maintain the credit of the municipalities of the State. We have no doubt that many of them have issued bonds for necessary expenses under the authority of the act of 1915, without submitting the matter to a vote. The authorities that issued the bonds, as well as the purchasers who bought them, had a right to conclude that the words "necessary expenses" meant what we have so often said they did in innumerable decisions of this Court. They had a right to rely on these decisions, and to overrule them now would inflict a deadly blow to the credit of all municipal governments in this State.

The judgment is

Affirmed.