J. P. WILLIAMSON, AND DUKE POWER COMPANY, INTERVENING, PLAIN-
TIFF, v. CITY OF HIGH POINT, C. S. GRAYSON, AS MAYOR, AND E. L.
BRIGGS, EDWARD GURLEY, C. A. LEWIS, E. N. PHILLIPS, J. S.
PICKETT, F. LOGAN PORTER, R. H. SECHREST, AND J. E. WARD,
AS MEMBERS OF THE COUNCIL OF SAID CITY.

(Filed 2 February, 1938.)

1. **Taxation § 38a—**

Taxpayers of a municipality may maintain an action ·to enjoin the
municipality from issuing its bonds.

2. **Appeal and Error § 41—Where plaintiff is entitled to enjoin defendant,
right of intervener to same relief need not be considered.**

Where it is determined on appeal that plaintiff taxpayer is entitled to
an injunction restraining the issuance of bonds for the construction of an
electric power plant by defendant city, the right of an intervening power
company to the same relief on its contention that its valuable franchise
rights would be destroyed, need not be considered.

3. **Taxation § 4—Bonds for municipal power plant are for public purpose
and necessary expense.**

Bonds for the construction of a municipal electric power plant are for
a public purpose and a necessary municipal expense, and may be issued
up to the constitutional limitation without a vote of its electors and with-
out legislative authority, and in excess of the constitutional limitation by
legislative authority without a vote of the people.   Art. VII, sec. 7.

4. **Taxation § 3—Art. VII, sec. 7, will be construed in pari materia with
the amended Art. V, sec. 4.**

Art. VII, sec. 7, and the amended Art. V, sec. 4, will be considered
*in pari materia*, and the word "debt" in Art. V, sec. 4, will be given the
same construction as has been given the word in construing Art. VII,
sec. 7, since the Legislature in framing the amendment must have had in
mind the construction which has been given the word as used in Art. VII,
sec. 7.

5. **Same—Contract of city to pay for property bought for public purposes
solely from revenue from the property does not create "debt."**

A contract of a municipality to construct a municipal electric power
plant and to issue its bonds to pay for same, with provision that principal
and interest of the bonds should be paid exclusively from the profits from
the plant without resort to funds raised by taxation, does not create a
"debt" of the municipality within the meaning of amended Art. V, sec. 4,
which prohibits the contraction of a debt by a municipality in any fiscal
year in excess of two-thirds of the amount by which its debt was de-
creased during the prior fiscal year.

6. **Municipal Corporations § 5—**

A municipal corporation is an agency of the State for the administra-
tion of local government, and has only the express and implied powers con-
ferred by the Legislature or which are essential to the declared objects
and purposes of the corporation.

**7. Municipal Corporations § 8—**

Public utilities are operated by a municipality in its *quasi*-private and not in its political or governmental capacity, but a municipality is without power to extend its electric lines beyond the corporate limits for the purpose of selling electricity to nonresidents in the absence of legislative authority.

**8. Same—Ordinarily, power to construct electric lines outside city limits is limited by proprietary power to operate utility for its citizens.**

Ordinarily, the power given a city by the Legislature to construct municipal electric lines and power plants outside its corporate limits and to sell electricity to nonresidents is related to and limited by its proprietary capacity to carry on such activities primarily for the benefit of its citizens. C. S., 2791, 2792, 2807, 2808; ch. 171, Private Laws of 1931, as amended by ch. 149, Private Laws of 1935.

**9. Same—Revenue Bond Act of 1935 authorizes municipalities to construct and operate utilities for the use and benefit of the citizens thereof.**

The power conferred upon a municipality to construct power lines and plants outside its corporate limits (C. S., 2791, 2792, 2807, 2808, ch. 171, Private Laws of 1931, as amended) is limited by the provisions of the Revenue Bond Act of 1935, since the act expressly repeals inconsistent provisions of any prior general or special law, C. S., 2969 (13), and under the provisions of the Revenue Bond Act a municipality may construct such lines and plants only in consonance with the policy of the act and the authority therein given municipalities to provide such conveniences for the health, safety, and benefit of the citizens of the municipality. C. S., 2969 (3).

**10. Same—City held without authority to construct or acquire proposed municipal electric power plant.**

Defendant city owned and operated its own electric distributing system, and purchased the electric power which it distributed from a power company. The city proposed to construct a municipal power plant and to issue its bonds therefor to be paid solely out of the revenue derived from the operation of the plant. The trial court found, under agreement of the parties, that the proposed plant would be located twenty-five miles outside the corporate limits, with transmission lines running through three counties, that it would generate more than three times the amount of electricity then used by the entire city, and that the purpose of project was to engage in the power business generally and to sell electricity to municipalities, industries, and individuals generally. *Held:* The undertaking is *ultra vires* the city, since the excess power is not incidental to a plant operated for its own use or for the use and benefit of its inhabitants, and therefore goes far beyond the powers conferred by the Revenue Bond Act of 1935.

**11. Appeal and Error § 37c—Under circumstances of this case, findings of lower court in injunctive proceedings held conclusive.**

Although the Supreme Court can review the evidence on appeal in injunctive proceedings, where there are no exceptions to the findings of fact by the lower court, and the record shows that the statement of case on appeal as served by appellees stated that it did "not contain all the evidence relating to the findings of fact to which there are no exceptions" the findings of fact will be held conclusive. Art. IV, sec. 13.

APPEAL by plaintiffs from *Sink, J.,* at August Special Term, 1937, of
GUILFORD.

Action originally submitted as controversy without action, in which
Duke Power Company intervened and filed complaint, for injunction
against the issuance of revenue bonds for construction of electric light,
heat, and power plant for the city of High Point, without the approval
of a majority of the qualified voters of the city, and against the construc-
tion of such plant.

The parties waived jury trial and agreed that the court should hear
the case upon agreed statement of facts and upon evidence offered by
either party, and find the facts. The court finds facts substantially as
follows: The plaintiffs are property owners and taxpayers in defendant
city of High Point, a municipal corporation, of which the codefendants
are and constitute the governing body.

The governing body of the city of High Point, acting under the
authority of the Revenue Bond Act of 1935, ch. 473, Public Laws 1935,
and the charter of the city of High Point, as amended (chs. 107 and 171,
Private Laws 1931; ch. 149, Private Laws 1935; and chs. 65 and 561,
Private Laws 1937), by resolution of 30 November, 1936, as amended 30
June and 4 August, 1937, authorized the acquisition, construction, and
operation of an electric system "primarily for the use and benefit of the
city of High Point and the consumers therein," but with the further
provision that "any services, facilities, or commodities furnished by the
electric system which shall not, in the judgment of the council, be
immediately required for the use and benefit of the city and consumers
therein may be sold to consumers outside of the city." Contemporane-
ously, and for the purpose of financing same, the said governing body
authorized the issuance of $3,171,500 of bonds, "payable solely from the
revenue of said electric system," to the payment of both principal and
interest of which as same mature, and to create and maintain reserves
therefrom as therein provided, a sufficient amount of said revenues are
pledged.

The governing body in said resolution prescribed at length regulations
for the fixing and maintaining of rates, fees, and charges for the facili-
ties and services afforded by said system; the collecting, handling, and
distributing of revenues to cover expenses of operation, and to create a
bond fund and a reserve for and the payment of said bonds and of other
obligations, not incurred under the Revenue Bond Act of 1935 to the
payment of which the revenue shall have been pledged also; against free
service by said electric system; and as to numerous other phases in con-
nection therewith to the faithful and punctual performance of which the
city, by the issuance of the bonds, is obligated and all of which shall
constitute covenants between the city and the holders of the bonds.

(The full context of the regulations is not necessary to consideration of this appeal.)

On 2 December, 1936, the said governing body accepted an offer of the United States of America to make a grant to the city of High Point in the amount of forty-five per cent of the cost of said electric system upon completion as determined by the Federal Emergency Administrator of Public Works, but not to exceed in any event the sum of $2,595,000. This grant is subject to terms and conditions of PWA Form 210, July, 1936.

The court further finds as fact that: Duke Power Company now holds and owns a municipal franchise originally granted by the city of High Point on 8 February, 1909, to John Leddy and his assigns for the term of sixty years from and after said date.

"5. Duke Power Company is now supplying, and for a number of years has supplied, the entire power requirements of the city of High Point and of the citizens, residents, and industrial enterprises within said city and in its vicinity, including the sale of electric power and current to the city of High Point for street lighting, city pumping, and for resale by said city to the citizens and residents within said city. During the calendar year 1935 the total power requirements of the city of High Point amounted to 11,083,000 kilowatt hours. During said year the total power requirements of all consumers of power within said city, including the city itself, amounted to 30,233,000 kilowatt hours, all of which was supplied by Duke Power Company. During said year the total power requirements within said city and in the vicinity thereof and adjacent thereto, also including the requirements of the city itself, were 32,249,000 kilowatt hours, all of which was supplied by Duke Power Company, and since said date it is agreed that there has been no substantial change up to the date of the hearing.

"6. The city of High Point now owns and operates, and for a number of years has owned and operated, within said city an electrical distribution system for the sale and distribution of electric current to the citizens and residents of said city, which system is adequate and sufficient for said purpose. The city of High Point purchases, and for a number of years has purchased, from Duke Power Company at wholesale the electric current which the city resells within said city.

"6½. The city of High Point is preparing and proposes to construct on the Yadkin River, at a point known as 'Styers' dam site' in Forsyth and Davie counties, a hydroelectric plant, with transmission and distribution lines extending from said plant into and through the counties of Guilford, Forsyth, and Davidson, together with substations, switching stations, and other electric appliances and equipment for use in connection with the operation of said plant, for the purpose of engaging in the

power business generally and of furnishing electric power and current to cities and towns, to industrial and commercial enterprises, to private individuals, and to the public generally for domestic, commercial, and industrial use. The annual output of said system will be 104,000,000 kilowatt hours of electric power, consisting of approximately 60,000,000 kilowatt hours of primary power and approximately 44,000,000 kilowatt hours of secondary power. The details of the construction of said system will be as set out in the application of the city of High Point to the PWA. That the dam site is something more than twenty-five miles from the city of High Point and the reservoir created by said dam will cover something like 15,000 acres of land located in the counties of Forsyth, Davie, and Yadkin. That the entire plant and system will require several additional thousands of acres of land, all of which will be located outside of the corporate limits of the city of High Point. . . .

"7. The question of issuing said bonds has not been submitted to the voters of the city of High Point at an election.

"8. The amount of said bonds is far in excess of the amount by which the indebtedness of the city of High Point was reduced during the last fiscal year of said city, namely, the fiscal year which ended 30 June, 1937, and this same condition is true of the fiscal year ending 30 June, 1936.

"9. The city of High Point owns and operates and for more than forty years has owned and operated a system for the distribution of electricity for light, heat, and power purposes; that said distribution system is owned and operated by the city of High Point in its proprietary or private capacity for public purposes, and that the proposed electric generating system would be owned and operated by the city of High Point in its proprietary or private capacity for public purposes; that the said system for the distribution of electricity for light, heat, and power purposes is one of the most fruitful sources of revenue of the city; said city has for a number of years derived a net profit after paying all expenses of operation, maintenance, administration, interest, and principal on the debt of said electric distribution system; and that for the fiscal year 1936-1937 the net profit derived from said system was approximately $200,000; that at the present time such electricity is purchased by said city from a private corporation and is not generated by said city. The city of High Point has outstanding bonds issued partly for the purpose of constructing said distribution system and partly for the purpose of funding a debt incurred for the purchase of electricity. The net revenues of said distribution system are pledged for the payment of all or some of said bonds, but the said net profit, after annual interest and principal payment, inures to the benefit of all the citizens and taxpayers of the city of High Point.

"10. That the resolutions of the city of High Point and the commitment from the Federal Emergency Administration of Public Works, all referred to hereinabove, do not commit the said city of High Point to the 'Styers' dam site' project nor to any other specific project. That, however, the city of High Point and the Federal Emergency Administration of Public Works have each made considerable investigation in regard to the possibilities of such a plan and the cost thereof. That it is the purpose and intent of said city, in the event that its right is established, to issue the revenue bonds as set forth in said resolution, to procure an advanced grant from the Federal Emergency Administration of Public Works to conduct further investigations and surveys of the possibilities and cost of erecting a generating plant at said 'Styers' dam site' and other available hydroelectric sites. That provision is made under the terms of said grant for an advanced grant for said purpose, which advanced grant, in the event that said project is not found to be practicable or feasible, is not to be repaid by said city unless same is expended in bad faith."

Upon the foregoing facts, the court below concluded as matters of law:

"1. That the issuance of said proposed bonds by the city of High Point will not violate the provisions of Art. V, sec. 4, of the Constitution of North Carolina, for the reason that said bonds are payable exclusively from the revenue of the proposed electric generating system and will not constitute 'debts' within the meaning of said section of the Constitution.

"2. That the issuance of said proposed bonds without the vote of the majority of the qualified voters of the city of High Point will not violate Art. VII, sec. 7, of the Constitution of North Carolina for the reason that said bonds will not constitute a debt, pledge of faith, or loan of credit within the meaning of said section of the Constitution.

"3. The issuance of said proposed bonds will not be in violation of the rights of the holders of the outstanding bonds to which the revenues of the present electric distribution system of the city of High Point are pledged.

"4. That ch. 149 of the Private Laws of 1935, and ch. 171 of Private Laws of 1931, and ch. 473 of the Public Laws of 1935, known as the 'Revenue Bond Act of 1935,' and ch. 107 of the Private Laws of 1931, and chs. 65 and 561 of the Public-Local and Private Laws of 1937, are not unconstitutional.

"5. That the plaintiff, Duke Power Company, has no right to an injunction against the city of High Point prohibiting said city from erecting said electric system, thus preventing competition in the electric and power business from the said city. That competition by the city of High Point in said city violates no right of the Duke Power Company.

"6. That the plaintiffs J. P. Williamson and Duke Power Company have no right as taxpayers of the city of High Point to an injunction against the issuance of said proposed bonds for the reason that said bonds will not be a general obligation of the city of High Point, and for the reason that said city will not, by the issuance of the proposed revenue bonds, incur a debt, pledge its faith, or lend its credit."

From judgment in accordance therewith, and denying injunctive relief, plaintiffs appealed to the Supreme Court, and assigned error.

*L. J. Fisher, Jr., and Gaston A. Johnson for plaintiff J. P. Williamson, appellant.*

*W. M. Hendren, Roberson, Haworth & Reese, W. B. McGuire, Jr., and W. S. O'B. Robinson, Jr., for Duke Power Company, intervening plaintiff, appellant.*

*R. L. Deal, R. T. Pickens, T. J. Gold, and G. H. Jones for defendants, appellees.*

WINBORNE, J. The right of plaintiffs, as taxpayers in the city of High Point, to maintain this action to test the authority of the city to issue the proposed bonds and to acquire and construct the proposed electric system, is too well recognized in this State to admit of debate. Therefore, if the plaintiffs be correct in their contentions, they are entitled to injunction. Hence, we deem it unnecessary to consider the further claim of the intervening plaintiff, as a public electric utility entity, owning a lawful business, valuable franchises, and property rights, to the additional right to maintain the action against threatened competition from a municipally owned electric system to be constructed allegedly without legal authority.

Three questions arise on this appeal for consideration: (1) Do bonds, issued to enable a municipality to acquire and construct a revenue producing undertaking, an electric system, payable exclusively from the revenue therefrom, pledged in security therefor, constitute a debt of the municipality within the meaning of Art. VII, sec. 7, and of Art. V, sec. 4, of the Constitution of North Carolina?

(2) If not, on the facts presented on this record, has the city of High Point, under the Revenue Bond Act of 1935 and its charter as amended, the authority to issue the proposed revenue bonds?

(3) On the facts presented on this record, does the city of High Point have the authority to acquire and construct the proposed electric system?

The first question is answered "No," on the authority of *Brockenbrough v. Comrs.*, 134 N. C., 1, 46 S. E., 28. An electric plant for municipal use and for the comfort and convenience of the inhabitants of a municipality is a public purpose and a necessary expense within

the meaning of Art. VII, sec. 7. *Fawcett v. Mount Airy,* 134 N. C., 125, 45 S. E., 1029; *Swindell v. Belhaven,* 173 N. C., 1, 91 S. E., 369. Nothing else appearing, the city of High Point has the authority to contract a debt for such expense and levy a tax (1) up to the constitutional limitation, without a vote of the majority of the qualified voters without legislative authority, and (2) in excess of the constitutional limitation by legislative authority without a vote of the people. *Palmer v. Haywood County,* 212 N. C., 284, 193 S. E., 668, and cases cited therein. However, Art. V, sec. 4, as adopted in amended form in 1936, except in certain cases not pertinent here, provides: ". . . The General Assembly shall have no power to authorize counties or municipalities to contract debts, and counties and municipalities shall not contract debts, during any fiscal year, to an amount exceeding two-thirds of the amount by which the outstanding indebtedness of the particular county or municipality shall have been reduced during the next preceding fiscal year, unless the subject be submitted to a vote of the people of the particular county or municipality." In the instant case it is admitted of record that the amount of the proposed bonds is far in excess of the amount by which the indebtedness of the city of High Point was reduced during the last fiscal year. Therefore, if the proposed bonds be a debt within the meaning of Art. V, sec. 4, even though the purpose be a necessary expense, the Legislature has no power to authorize the city to issue them unless the question be submitted to a vote of the people.

The word "debt" is used in both Article VII, sec. 7, and Article V, sec. 4. · The sections are to be considered *in pari materia. Parvin v. Comrs.,* 177 N. C., 508, 99 S. E., 432.

When so considered, the *Brockenbrough case, supra,* is decisive of ·the question. In that case this Court first considered the question and approved the issuance of special revenue bonds. There the board of water commissioners, acting for the city of Charlotte, under ch. 271, Private Laws 1899, as amended by ch. 196 of Private Laws of 1903, was authorized to issue $200,000 in bonds "to acquire additional property and make such additional improvements thereto as may be necessary to at all times furnish the city of Charlotte with a sufficient supply of good, wholesome water," and to be secured equally and ratably by a first mortgage or deed of trust upon all the property that constitutes the waterworks system, including such additional property.

The act there provides for the payment of the principal and interest on said bonds out of revenues collected from the said water system, and further provides: "That none of the funds of the city of Charlotte, raised by taxation, shall ever be applied to the payment of either the principal or interest of the bonds issued by virtue of sec. 6 hereof." It is recited that: "The city has found it necessary to and has laid many

miles of sewer and water pipes, and purchased the necessary implements, tools, etc., for the operation thereof, all of which are necessary for the protection of the property and health of said city and its inhabitants; that the present water supply is inadequate to meet the demands of public and private consumers and an efficient operation of said plant." The resolution of the commission provided: "That neither the bonds authorized to be issued hereunder, the coupons attached thereto, nor the deed of trust securing the same, shall be deemed or held as creating any debt of the city of Charlotte, or as pledging the faith or lending the credit of said city for the payment of the indebtedness hereby authorized, and no action shall be maintained in any court against said city or any of its officers to enforce the payment of said indebtedness evidenced by said bonds, coupons, or deed of trust except as to the funds and property herein expressly charged with the payment thereof." This Court, speaking to the question, said: "If, as contended by the defendants, the bonds proposed to be issued are not debts or liabilities of the city, or if the making and issuance of them be not pledging the faith or lending the credit of the city within the meaning of Art. VII, sec. 7, of the Constitution, several important and interesting questions discussed in the briefs will be eliminated. This question has not before been presented to or decided by this Court. The language of the Constitution declares that no county, city, town, or other municipal corporation 'shall contract any debt, pledge its faith, or loan its credit,' etc. The plaintiffs insist that the issuing of the bonds in controversy comes within this inhibition. 'Debt' is defined to be 'that which is due from one person to another; that which one person is bound to pay or perform to another.' Black's Law Dict., 337. Perrigo v. Milwaukee, 92 Wis., 236. 'An indebtedness within restrictions upon municipal indebtedness is an agreement of some kind by the municipality to pay money where no suitable provision has been made for the prompt discharge of the obligation imposed by the agreement.' Sackett v. New Albany, 88 Ind., 473, 45 Am. Rep., 467. 'A debt is a specified sum of money which is due from one person to another, and denotes not only the obligation of the debtor to pay, but also the right of the creditor to receive and enforce payment.' S. v. Hawes, 112 Ind., 323. It would not be contended that upon the facts in this case the city lends its credit or pledges its faith in regard to the proposed bonds. It does not endorse or guarantee their payment or assume any obligation in respect to them. Nor can its revenues be applied to the payment of them." Then, after reviewing authorities elsewhere, the Court continued: "We can see no reason why the Legislature may not, under its general power to provide for the government of cities and towns and legislate in regard to them, authorize the board of water commissioners to apply the rents and tolls, as they accrue, to the purposes set out in the act and to pledge such application. The contract

thus made will be enforcible by appropriate remedies. We therefore hold that the bonds authorized by the Act of 1903 to be issued do not constitute a debt against the city of Charlotte; . . . that the Legislature has the power to authorize the issuing of bonds and the execution of the mortgage proposed to be issued and executed pursuant to the Act of 1903. . . ."

"It is an established rule of construction that, where a constitutional provision has received a settled judicial construction, and is afterward incorporated into a new or revised Constitution, it will be presumed to have been retained with a knowledge of the previous construction, and the courts will feel bound to adhere to it." 12 C. J., 717.

In this State, in *Ferrall v. Ferrall,* 153 N. C., 174, 69 S. E., 60, *Hoke, J.,* speaking to the same subject of construction, said: "The action of our constitutional convention in thus adopting a public statute of accepted construction and on a subject of momentous interest and making the same, in its entirety and very words, a part of our organic law, while not necessarily conclusive, affords well-nigh convincing evidence that the words were intended to bear their established meaning, and in this subject should so prevail as the law of the land," citing *Rhyne v. Lipscombe,* 122 N. C., 650, 29 S. E., 57.

In *Hall v. Redd,* 196 N. C., 622, 146 S. E., 583, *Stacy, C. J.,* said: "It is not proposed that the municipality shall contract any debt or loan its credit so as to involve the imposition of a tax. Hence, this renders Art. VII, sec. 7, of the Constitution, requiring a vote of the people, except for a necessary expense, inapplicable," citing *Brockenbrough v. Comrs., supra; Gardner v. New Bern,* 98 N. C., 228, 3 S. E., 500.

Since the word "debt" as used in Art. VII, sec. 7, of the Constitution has been so interpreted by the Court, proper interpretation will give to it the same meaning in a later amendment to the Constitution as in Art. V, sec. 4.

The prevailing opinion in other jurisdictions is that the special fund doctrine, as enunciated in the *Brockenbrough case, supra,* to the effect that a contract by a municipality to purchase and pay for property for public purposes solely out of the net earnings of the property, without resort directly or indirectly to revenue derived from taxation, does not create a debt within the meaning of such constitutional provisions. *Fairbanks v. City of Wagoner,* 81 Fed. (2d), 209, note, page 216; *George v. City of Asheville,* 80 Fed. (2d), 55; 72 A. L. R., 688 n.

In view of the disposition hereinafter to be made of the present case, we deem it needless to determine whether any of the covenants between the city and the bondholders go beyond the holding in the *Brockenbrough case, supra.*

The second question is so closely interwoven with the third that the two may be considered together. Each is answered in the negative.

This invites inquiry as to the authority and extent of authority of a municipal corporation in connection with a municipally owned and operated public utility.

The Constitution imposes upon the Legislature the duty to provide by general laws for the organization of cities, towns, and incorporated villages. Art. VIII, sec. 4. "It is said that the power of the Legislature to control them in the exercise of their municipal powers is somewhat more restricted than in the case of counties, yet both are but instrumentalities of the State for the administration of local government, and their authority as such may be enlarged, abridged, or withdrawn entirely at the will or pleasure of the Legislature." *Murphy v. Webb,* 156 N. C., 402, 72 S. E., 460.

In *Holmes v. Fayetteville,* 197 N. C., 740, 150 S. E., 624, *Adams, J.,* said: "The powers of a municipal corporation are those granted in express words, those necessary or fairly implied in, or incident to, the powers expressly granted, and those essential to the declared objects and purposes of the corporation. . . . The dual capacity or twofold character possessed by municipal corporations is governmental, public, or political, and proprietary, private, or *quasi*-private. In its governmental capacity a city or town acts as an agency of the State for the better government of those who reside within the corporate limits, and in its private or *quasi*-private capacity it exercises powers and privileges for its own benefit. . . . The general rule is that a municipal corporation has no extra-territorial powers; but the rule is not without exceptions. The Legislature has undoubted authority to confer upon cities and towns jurisdiction for sanitary and police purposes in territory contiguous to the corporation. . . . If a municipality owns and operates a water or lighting plant and has an excess of water or electricity beyond the requirements of the public, which is available for disposal, it may make a sale of such excess to outside consumers as an incident to the proper exercise of its legitimate powers. . . . It is equally clear that without legislative authority the defendant would not be permitted to extend its lines beyond the corporate limits for the purpose of selling electricity to nonresidents of the city."

In *Asbury v. Albemarle,* 162 N. C., 247, 78 S. E., 146, *Brown, J.,* said: "It is well settled that local conveniences and public utilities, like water and lights, are not provided by municipal corporations in their political or governmental capacity, but in that *quasi*-private capacity in which they act for the benefit of their citizens exclusively."

Reviewing pertinent statutory authority with which the city of High Point is clothed, we find that the charter, Private Laws 1931, ch. 107, Art. II, sec. 4, provides that the city shall have the rights *inter alia* contained in: (1) C. S., 2791-2792, to purchase lands within and outside of the city, for electric lights, power systems, and other public utilities,

with right of eminent domain; (2) C. S., 2807-2808, to own and main-
tain its own light and water systems, to furnish light to the city and its
citizens and to any person, firm, or corporation desiring same outside the
corporate limits, where the service is available," and to fix rates for those
outside different from those inside. The charter was amended by ch. 171,
Private Laws 1931, by which the city was given the right to operate its
water, sewerage, and electric light lines and system "for a distance not
exceeding three miles" outside the city limits. The words "for a distance
not exceeding three miles" were stricken therefrom by ch. 149, Private
Laws 1935, so that the provisions of ch. 171 now read: "The said city of
High Point be and it is hereby authorized and empowered, in its discre-
tion, to extend, construct or purchase, maintain and operate its water,
sewerage and electric lines and system  .  .  .  in all directions beyond
the corporate limits of said city as the same now exist or may hereafter
be established; to sell and furnish electric current and lights in such
area, and to charge for the use of such utility such rates as the city
council may determine." This act became effective upon ratification on
10 April, 1935.

Then in 1937 by two private acts, chs. 65 and 561, the powers of the
Revenue Bond Act of 1935 were continued for four years for High
Point to issue revenue bonds thereunder for any purpose now authorized
by the Municipal Finance Act or any other law. C. S., 2787 (3) (5),
authorizes all cities to purchase, conduct, own, lease, and acquire public
utilities and to create, provide for, construct, regulate, and maintain all
things in the nature of public works.

Conceding, therefore, that the city of High Point has express author-
ity of the Legislature to purchase lands within and outside of the city
for an electric power system, and to extend, construct, maintain, and
operate such system in all directions beyond the corporate limits, and
to sell and furnish electric current and lights to the users in such area,
ordinarily such powers relate to and are limited by the proprietary
capacity in which the city acts for the benefit of its citizens in a compact
community.

But, be that as it may, the city of High Point is here undertaking to
acquire and construct an electric system and to issue revenue bonds to
finance same under the authority of the Revenue Bond Act of 1935.
This act became effective 11 May, 1935. It contains provision that:
"The powers conferred in this act shall be in addition and supplemental
to the powers conferred by any other general, special, or local law."
But it further provides that: "In so far as the provisions of this act are
inconsistent with any other general, special, or local law, the provisions
of this act shall be controlling." C. S., 2969 (13).

In the act the Legislature expressly declares the policy of the State
with reference to its purpose in this manner: ".  .  .  No municipal-

ity shall operate such undertaking primarily for profit, but shall operate such undertaking for the use and benefit of the consumers served by such undertaking and for the promotion of the welfare and for the improvement of the health and safety of the inhabitants of the municipality." C. S., 2969 (3).

Policy is a settled or definite course or method adopted and followed by a government. Webster's International Dict. Ordinarily, where the law making power distinctly states its design, no place is left for construction. 59 C. J., 960.

Further analyzing the Act of 1935, it is seen that, in addition to the powers which it may now have, any municipality as therein defined, including cities, shall have the power under this act: "(a) To construct, acquire by gift, purchase, or the exercise of the right of eminent domain, . . . any undertaking, within the municipality, and to acquire . . . lands or rights in land or water rights in connection therewith, (b) *to operate and maintain any undertaking for its own use or for the use and benefit of its inhabitants, and also to operate and maintain such undertaking for the use and benefit of persons, firms, and corporations (including municipal corporations and inhabitants thereof) whose residences or places of business are (or which are) located in such municipality* (italics ours); (c) to issue its bonds to finance in whole or in part the cost of the acquisition, purchase, construction, . . . of any undertaking; (d) to prescribe and collect rates, fees, charges for services, facilities and commodities furnished by such undertaking; and (e) to pledge to the punctual payment of said bonds and interest thereon an amount of the revenues of such undertaking . . . sufficient to pay said bonds and interest as the same shall become due and to create and maintain reasonable reserves therefor." Thus, the right of acquisition, purpose of operation, and manner of financing of an undertaking are linked together, and limit the extent of the undertaking.

The narrative revealed by the findings of fact of the court below discloses that in the proposed undertaking and proposed bond issue the city of High Point is in conflict with the purpose and intent of the provisions of the act. These findings show that: The city owns and operates, in its proprietary capacity, a system for distribution of electricity for light, heat and power purposes, through which it sells and distributes electric current, purchased therefor. The system and supply of current are adequate and sufficient for the needs and requirements of the city and its citizens. For the fiscal year 1936-37 the net profit derived from the distribution system was approximately $200,000. The total power requirements during the calendar year 1935 within the city and in the vicinity thereof and adjacent thereto, including the requirements of the city itself, were 32,249,000 kilowatt hours. The current annually generated by the proposed system will be 104,000,000 kilowatt hours of

electric power, consisting of approximately 60,000,000 kilowatt hours of primary and approximately 44,000,000 kilowatt hours of secondary power. The city is preparing and proposing to construct a system, to cost more than $5,500,000, "with transmission and distribution lines extending from said plant into and through the counties of Guilford, Forsyth, and Davidson, . . . for the purpose of engaging in the power business generally and of furnishing electric power and current to cities and towns, to industrial and commercial enterprises, to private individuals and the public generally for domestic, commercial, and industrial use."

Such an undertaking goes far beyond the powers conferred by the Revenue Bond Act of 1935, and is *ultra vires*. The excess power is not incidental to a plant operated "for its own use or for the use and benefit of its inhabitants."

The defendant contends, however, that there is no evidence to support such findings, and that the only evidence in the record bearing upon the purpose of the city council is that expressed in the amendment of 30 June, 1937, to the original resolution authorizing the construction of the system, in which it is stated: "The electric system shall be constructed and operated primarily for the use and benefit of the city of High Point and the consumers therein, but any services, facilities or commodities furnished by the electric system which shall not, in the judgment of council, be immediately required for the use and benefit of the city and consumers therein may be sold to consumers outside the city." Defendants request that facts be reviewed by this Court, and cite *Mewborn v. Kinston,* 199 N. C., 72, 154 S. E., 76, as authority. *Brogden, J.,* there said: "The Court has the power to review facts in injunction proceedings. *Peters v. Highway Commission,* 184 N. C., 30, 113 S. E., 567. Nevertheless, there is a presumption that the judgment and findings of fact are correct, and the burden is upon the appellant to assign and show error. *Plott v. Comrs.,* 187 N. C., 125, 126 S. E., 190."

In the instant case there is no exception to the findings of fact by either plaintiffs or defendants. The record further shows that the statement of case on appeal as served by plaintiffs, service of which was accepted by defendants, contains the statement: "The following statement . . . does not contain all of the evidence relating to the court's findings of fact to which there are no exceptions." Under these circumstances, the findings of fact have the force and effect of a verdict by a jury and are conclusive. Art. IV, sec. 13, N. C. Constitution. *Barringer v. Savings & Trust Co.,* 207 N. C., 505, 177 S. E., 795.

On these facts the court below erred in refusing to grant the injunction as prayed.

The judgment below is

Reversed.