T. A. RAMSEY, A TAXPAYER OF CLEVELAND COUNTY, ON BEHALF OF HIMSELF
AND ALL OTHER TAXPAYERS OF CLEVELAND COUNTY, v. F. L. ROLLINS,
CHAIRMAN; KNOX SARRATT, JOHN D. WHITE, H. B. BUMGARDNER,
AND M. A. SPANGLER, SR., MEMBERS, BOARD OF COMMISSIONERS
FOR CLEVELAND COUNTY, NORTH CAROLINA.

(Filed 9 October, 1957.)

**1. Appeal and Error § 21—**

Upon a sole exception to the signing of the judgment it will be presumed
that the facts found by the lower court are supported by competent evi-
dence, and the findings are binding on appeal.

**2. Counties § 1—**

Counties are agencies of the State and are subject to almost unlimited
legislative control within constitutional limitations.

**3. Taxation § 5—**

A county may levy taxes for public purposes only. Constitution of North Carolina, Art. V, sec. 3.

**4. Taxation § 4—**

No county or municipal corporation may levy a tax except for a necessary expense without the approval of its qualified voters. Constitution of North Carolina, Art. VII, sec. 7.

**5. Counties § 2—**

Ch. 266, Session Laws of 1957, conferring on counties the power to construct and maintain water and sewer systems, is constitutional and valid, and the fact that the statute requires that bonds for the construction of such systems by a county be approved by its qualified voters, notwithstanding that such purpose is a public one, does not impair the constitutionality of the grant of such power.

**6. Taxation § 1a—**

The fact that the construction of a water and sewer system by a county may not benefit some sections of the county or all of its inhabitants equally does not render the tax levied to pay the bonds issued for such purpose unconstitutional as a deprivation of property without due process of law or as a denial of the equal application of law, since the requirement of uniformity and equality of burden in taxation relates to the imposition of a tax and not to the distribution of the proceeds. Constitution of North Carolina, Art. I, secs. 5 and 17; Fourteenth Amendment to the Constitution of the United States.

APPEAL by plaintiff from *Froneberger, J.,* in Chambers, at Shelby, North Carolina, 22 August 1957. From CLEVELAND.

This is a civil action brought by a taxpayer of Cleveland County in which, as plaintiff, he seeks to restrain the Board of Commissioners of said County (hereinafter called Board of Commissioners) from issuing and selling bonds in the amount of $310,000 for the purpose of constructing a water distribution system, and the issuance and sale of bonds in the amount of $105,000 for the purpose of constructing a sewer system, pursuant to the provisions of the County Finance Act as set out in Article 9 of Chapter 153 of the General Statutes of North Carolina, as amended by Chapter 266 of the Session Laws of 1957.

A special bond election was duly called, to be held on 28 September 1957, and the plaintiff, in the court below, also sought to restrain the holding of the election.

The plaintiff alleges that Chapter 266 of the Session Laws of 1957 is unconstitutional and invalid for that: (a) it authorizes bonds for the construction of water and sewer systems, and that these are not proper county purposes; (b) the statute violates Article I, Section 17, of the Constitution of North Carolina, by depriving persons in Cleveland County of their property without due process of law; (c) the

statute violates the equal protection of the law clause of the Fourteenth Amendment to the Constitution of the United States, and Article I, Section 5, of the Constitution of North Carolina; (d) the statute is invalid on its face because it authorizes a bond issue for purposes other than a public purpose; and (e) the statute is unconstitutional on its face.

The Board of Commissioners, in its answer, admitted its intention to issue the bonds described herein and for the purposes set out in the complaint, and denied the allegations of the complaint to the effect that it is without legal authority to do so. It alleges further that there are areas in Cleveland County without proper water and sewer service; that such condition is jeopardizing the health, safety, and welfare of its inhabitants.

The parties waived a jury trial and agreed that his Honor should hear the matter in Chambers and make his findings of fact and conclusions of law based on the pleadings and any other evidence that might be offered.

The court made the following findings of fact:

"1. That certain rural areas in Cleveland County are at the present time without proper water and sewer service.

"2. That the lack of proper water and sewer service is jeopardizing the health, safety, and welfare of the County and its inhabitants.

"3. That it would be to the public interest for Cleveland County to provide the necessary water and sewer facilities.

"4. That in 1957 the General Assembly of North Carolina in regular session passed House Bill No. 462 entitled: 'AN ACT AMENDING THE COUNTY FINANCE ACT TO AUTHORIZE THE ISSUANCE OF BONDS BY COUNTIES FOR WATER SYSTEMS AND SANITARY SEWER SYSTEMS AND FIXING THE MAXIMUM MATURITIES OF SUCH BONDS AND AMENDING SECTION 153-9 OF THE GENERAL STATUTES TO AUTHORIZE COUNTIES TO ACQUIRE, CONSTRUCT, OPERATE, LEASE AND DISPOSE OF WATER SYSTEMS AND SANITARY SEWER SYSTEMS AND TO CONTRACT FOR THE OPERATION AND LEASE OF SUCH SYSTEMS AND FOR A SUPPLY OF WATER AND THE DISPOSAL OF SEWAGE.'

"5. That since the passage of the said 1957 Act by the General Assembly of North Carolina the defendants, as the Board of Commissioners, have acted in reliance on it, in reliance on Section 153-9 as amended of the General Statutes of North Carolina, and in reliance on the County Finance Act, as amended (G.S. 153-69, et seq.), and have set out to determine the will of the people concerning the issuance of bonds for the purpose of providing proper water and sewer facilities for certain areas of Cleveland County.

"6. That all of the actions of the said Board of Commissioners leading up to the final passage of an order authorizing $310,000 Water

Bonds and an order authorizing $105,000 Sanitary Sewer Bonds, and all of their actions in calling for an election on September 28, 1957, to determine the will of the qualified voters of the County regarding the issuance and sale of such bonds have been in accordance with the General Statutes of North Carolina.

"7. That there are no controverted issues of fact in this case and the only issues are issues of law."

From the foregoing findings of fact, the court concluded as a matter of law: (1) That the construction of the proposed waterworks and sewer systems is a proper county purpose. (2) That the issuance of bonds for the construction of the aforesaid systems would not deprive the citizens of Cleveland County of their property without due process of law or deprive them of the equal protection of the law. (3) That the authority pursuant to which the Board of Commissioners is acting does not violate Section 5 or Section 17 of Article I of the Constitution of North Carolina or the Fourteenth Amendment to the Constitution of the United States. (4) That Chapter 266 of the 1957 Session Laws of North Carolina authorizes the issuance of bonds for purposes which are public purposes. That the aforesaid amendment to the County Finance Act is valid and constitutional on its face. Whereupon, judgment was entered denying the plaintiff's prayer for an injunction to restrain the Board of Commissioners from holding the proposed bond election and issuing the proposed water and sewer bonds, dismissing the action, and directing that the plaintiff pay the costs to be taxed by the Clerk.

The plaintiff appeals, assigning error.

*L. T. Hamrick for plaintiff appellant.*

*C. C. Horn, J. A. West, and A. A. Powell for defendant appellees.*

*Attorney-General Patton and Assistant Attorney-General Moody, Amicus Curiae.*

DENNY, J. The bond election sought to be restrained was held on Saturday, 28 September 1957, and the election returns have been canvassed and the official results thereof announced. The results of the election have been duly certified and filed with this Court, which show that the voters of Cleveland County voted overwhelmingly in favor of issuing the proposed bonds. Since no question has been raised with respect to the procedure in authorizing the issuance of the bonds, or in the calling of the bond election, the question as to whether the defendants should have been restrained from holding the election has now become academic or moot. *Archer v. Cline, ante,* 545, 98 S.E. 2d 889. Consequently, the validity of these bond issues depends upon whether

or not the plaintiff is successful in his attack upon the constitutionality of Chapter 266 of the Session Laws of 1957.

The plaintiff has but one assignment of error and that is based on his exception to the signing of the judgment. Therefore, the facts found by the court below are presumed to be supported by competent evidence and are binding on appeal. *Goldsboro v. R. R., ante,* 101, 97 S.E. 2d 486.

We think the attack on the constitutionality of the above Act may be resolved by determining whether or not the General Assembly may grant to a county the authority to issue bonds for the construction of water and sewer systems, when the voters of the county have approved the issuance thereof.

Counties are agencies of the State, and in the exercise of ordinary governmental functions, unless directed or restrained by a constitutional provision or provisions, are, for all practical purposes, subject to the unlimited control of the Legislature. *Day v. Commissioners,* 191 N.C. 780, 133 S.E. 164; *S. v. Jennette,* 190 N.C. 96, 129 S.E. 184; *Commissioners v. Commissioners,* 157 N.C. 514, 73 S.E. 195; *Dare County v. Currituck County,* 95 N.C. 189.

In the last cited case, this Court, in considering the creation, powers and functions of counties, said: "They are instrumentalities of the State government, and subject to its legislative control; they possess such corporate powers and delegated authority as the Legislature may deem fit to confer upon them, and such power and authority must be exercised in the way, and only for the purpose prescribed by legislative enactment; and moreover, they are always subject to legislative control, and their powers may be abolished, enlarged, abridged, or modified." *Bd. of Education v. Commissioners,* 113 N.C. 379, 18 S.E. 661; *Jones v. Commissioners,* 143 N.C. 59, 55 S.E. 427; *Trustees v. Webb,* 155 N.C. 379, 71 S.E. 520; *Woodall v. Highway Commission,* 176 N.C. 377, 97 S.E. 226; *Sparkman v. Commissioners,* 187 N.C. 241, 121 S.E. 531; *O'Neal v. Wake County,* 196 N.C. 184, 145 S.E. 28.

A county may levy taxes for public purposes only. Article V, Section 3, of the Constitution of North Carolina; *Nash v. Tarboro,* 227 N.C. 283, 42 S.E. 2d 209. Also, in Article VII, Section 7, of our Constitution, it is provided: "No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless approved by a majority of those who shall vote thereon in any election held for such purpose." Article VII, Section 13, further provides: "The General Assembly shall have full power by statute to modify, change, or abrogate any and all of the provisions of this article, and substitute others in their place, except sections seven, nine and thirteen."

The appellant seriously contends that the construction of the proposed water and sewer systems is not a proper county purpose and is not for a public purpose. We do not concur in this view. "In the absence of authority conferred by law, counties have no power to construct, operate, or maintain public improvements. The Legislature may, however, and at times does, confer on counties power to construct and operate public improvements, such as electric power plants, hospitals, sewer systems, and incinerators." 20 C.J.S., Counties, section 50, page 804.

The Act under consideration clearly gives a county the power to "acquire, construct, reconstruct, extend, improve, operate, maintain, lease and dispose of water systems and sanitary sewer systems, to contract for the operation, maintenance and lease of such systems, and to contract for a supply of water and the disposal of sewage." We know of no constitutional inhibition limiting the exercise of these powers.

It is true that counties in this State have not heretofore constructed and maintained water and sewer systems for the simple reason our Legislature has not seen fit to grant them such powers until it enacted the statute under consideration. We have many congested areas in this State outside the corporate limits of our cities and towns, which have no access to water and sewer systems. The hazards to health in such areas may be as acute as they would be in municipalities if the municipalities did not make adequate provisions for water and sewer systems. Doubtless, the Legislature took into consideration the changing conditions in our rural communities in giving the counties these additional powers, as well as the fact that many industrial plants and residential developments are being located in areas beyond the perimeter of the service of any municipality or water or sewer district.

Since the decision in *Fawcett v. Mt. Airy,* 134 N.C. 125, 45 S.E. 1029, 63 L.R.A. 870, 101 Am. St. Rep. 825, decided in 1903, this Court has uniformly held that expenses incurred for the construction of water and light plants, as well as sewer systems, are for a public purpose and that the cost of such construction is a necessary expense. *McKinney v. High Point,* 237 N.C. 66, 74 S.E. 2d 440; *Rhodes v. Asheville,* 230 N.C. 134, 52 S.E. 2d 371; *Green v. Kitchin,* 229 N.C. 450, 50 S.E. 2d 545; *Williamson v. High Point,* 213 N.C. 96, 195 S.E. 90; *Power Co. v. Elizabeth City,* 188 N.C. 278, 124 S.E. 611; *Reed v. Engineering Co.,* 188 N.C. 39, 123 S.E. 479; *Swindell v. Belhaven,* 173 N.C. 1, 91 S.E. 369; *Greensboro v. Scott,* 138 N.C. 181, 50 S.E. 589; *Davis v. Fremont,* 135 N.C. 538, 47 S.E. 671.

The mere fact that the General Assembly has now delegated the authority to counties to construct water and sewer systems, as well as to cities and towns, does not change the construction of such systems

from being for a public purpose. Neither does the limitation upon the counties, requiring that bonds for the construction thereof be approved by the voters in such county, impair the constitutionality of the grant of such power in any respect.

The contention that Chapter 266 of the Session Laws of 1957 violates Article I, Section 17, of the Constitution of North Carolina, by depriving persons of Cleveland County of their property without due process of law, and that the statute violates the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, and Article I, Section 5, of the Constitution of North Carolina, is untenable. *S. v. Bd. of Commissioners of Allen County,* 124 Ohio St. 174, 177 N.E. 271; *S. v. Carney,* 163 Ohio St. 159, 126 N.E. 2d 449; *Keene v. Jefferson County,* 135 Ala. 465, 33 So. 435; *Welch v. Coglan,* 126 Md. 1, 94 A. 384; *Thomas v. Gay,* 169 U.S. 264, 42 L. Ed. 740; *Nashville, C. & St. L. R. Co. v. Wallace,* 288 U.S. 249, 77 L. Ed. 730.

In *Holton v. Commissioners of Mecklenburg County,* 93 N.C. 430, a statute authorized a tax for public roads to be imposed upon all property in Mecklenburg County, and that no part of the tax be expended in the City of Charlotte for that purpose. The plaintiff, a taxpayer in Charlotte, contended the provision that no part of the tax should be expended in Charlotte was unequal and unjust. This Court said: "The Constitution does not prohibit such inequality. While it is very true that there must be equality and uniformity in imposing the burden of taxation upon property subject to it, so that each taxpayer shall pay the same proportionate tax on the same species of property taxed that every other taxpayer pays . . . this rule of equality does not apply to the distribution of the revenue arising from such taxation. . . . The necessities, wants, purposes, and interests of government are such that it is practically impossible to distribute its revenues equally among those who pay taxes. Indeed, this cannot in most instances be approximately done, not even to the localities from which most of it is taken. The State may, sometimes must, expend large sums of money in one section for proper and necessary purposes while it expends very little in another, when perhaps the greater part of the taxes were paid by taxpayers in the latter. This is an essential inequality, arising from the diversified and multiplied wants and necessities of government. Its very nature renders such inequality necessary. A constitutional provision forbidding it would defeat, at all events greatly hinder, the purposes and aims of government."

In the case of *Brown v. Commissioners,* 100 N.C. 92, 5 S.E. 178, it is said: "The Legislature may direct how the ordinary county revenues shall be applied within the county for any lawful purpose."

Likewise, in *Newell v. Green,* 169 N.C. 462, 86 S.E. 291, this Court said: ". . . the provision of the Constitution requiring uniformity

applies to the levy of taxes and not to the distribution of the revenue derived therefrom." This same principle was applied in *Jamison v. Charlotte,* 239 N.C. 682, 80 S.E. 2d 904.

It is said in 20 C.J.S., Counties, section 261, page 1176, "The particular provision for which the Legislature may authorize counties to issue bonds, and which in many cases have been held to do so either expressly or impliedly, include . . . construction of a sewage system although all persons in the county are not directly benefited . . ."

In the case of *S. v. Bd. of Commissioners of Allen County, supra,* the Commissioners had issued bonds to construct a sewer system outside a municipality in a sanitary district, and the general credit of the county had been pledged for the payment thereof in addition to certain assessments levied in the sanitary district, where the sewer system was constructed. Certain citizens of the county resisted payment of the taxes levied for the payment of the principal and interest due on the bonds which remained unpaid after the assessments collected had been insufficient to pay said indebtedness. The Supreme Court of Ohio said: "The county is the unit through which many of the important functions of the government are carried on. . . . The fact that there may be residents in remote portions of Allen County who will receive no possible benefit from these improvements, and who are in no apparent danger from those contagions which are usually caused by pollution, cannot stand in the way of a general governmental policy declared by the Legislature in the interest of public health and public welfare. . . . The decisions of our own State, while not dealing with sewer systems outside of municipalities, have frequently dealt with other improvements outside of municipalities, and the same principles must necessarily apply. The power to levy a general tax throughout the county is authorized by Section 7, Article X, of the Ohio Constitution, and is not dependent upon the receipt of direct benefit by the taxpayers of the county or equal distribution of the potential benefits in proportion to the burdens of the taxes levied. Cooley on Taxation (4th Ed.), section 20 . . ." See *Welch v. Coglan, supra,* in which the Court reached a similar conclusion where the facts were substantially the same.

In *S. v. Carney, supra,* the Court said: "It is well established that county improvements may be authorized, constructed, and maintained by the county, although they may directly benefit only a part of the taxpayers of the county, and the fact that the cost of the construction and management of such improvements is borne by county taxes, does not contravene the rule of uniform taxation according to value contained in Section 2, Article XII of the Ohio Constitution."

The foregoing section of the Ohio Constitution provides that property shall be taxed by uniform rule according to value.

In the case of *Keene v. Jefferson County, supra,* the county had been made a sanitary district, but the area in which the proposed improvements were to be made constituted only a part of the county. At the same session of the Legislature, the county was authorized to issue its bonds to pay for the proposed improvements, and to levy a county-wide tax for the payment of interest on said bonds and to create a sinking fund for their redemption. The validity of the bonds as a county obligation was attacked on the ground that the proposed improvements were not such an enterprise as would be beneficial to all the people of the county. The Court said: "The Acts, if that were important, are not fairly subject to such objection."

In *Thomas v. Gay, supra,* the Court said: "It is no objection to a tax that the party required to pay it derives no benefit from the particular burden; *e.g.,* a tax for school purposes levied upon a manufacturing plant. . . . In Cooley on Taxation, 16, the result of a wide examination of the cases is thus stated: 'If it were practicable to do so, the taxes levied by any government ought to be apportioned among the people according to the benefit which each receives from the protection the government affords him, but this is manifestly impossible.'"

In this jurisdiction, we have heretofore held that the General Assembly has the authority to grant to a county the right to construct and operate an airport in its proprietary capacity. *Rhodes v. Asheville, supra.*

In light of the provisions of our Constitution, and our decisions and cited authorities, we hold that the General Assembly may grant to a county the authority to issue bonds for the construction of water and sewer systems when "approved by a majority of those who shall vote thereon in any election held for such purpose." We further hold that Chapter 266 of the 1957 Session Laws of North Carolina is constitutional, and the proposed bonds, when issued, will be valid obligations of Cleveland County.

The judgment of the lower court is

Affirmed.