JOHN A. THOMASSON, ON BEHALF OF HIMSELF AND OTHER PROPERTY OWNERS AND TAXPAYERS IN THE CITY OF CHARLOTTE, N. C., v. JAMES S. SMITH, CLAUDE L. ALBEA, HERBERT H. BAXTER, HERMAN A. BROWN, STEVE W. DELLINGER, MARTHA W. EVANS, ERNEST C. FOARD, W. EVERETT WILKINSON, AND THE CITY OF CHARLOTTE, N. C.

(Filed 29 October, 1958.)

**1. Municipal Corporations § 5—**

Section 6, Chapter 802, Session Laws of 1957, authorizes the City of Charlotte to extend its water and sewer lines into the area to be annexed, upon the approval of the voters of annexation, prior to the time fixed by the statute as the effective date of the annexation.

**2. Same: Taxation § 5: Constitutional Law § 23— Bonds for extension of municipal services to territory to be annexed are for public purpose.**

A municipal corporation may issue bonds and levy taxes to pay principal and interest thereon and use the proceeds to finance the extension of water and sewer facilities into an area to be annexed at a fixed future date after the residents of the area to be annexed have approved the annexation and the citizens of the municipality have approved both the annexation and the issuance of bonds, and such bonds are for a public purpose, and the tax imposed within the municipality prior to annexation does not deprive the taxpayers of the city of property without due process of law. Fourteenth Amendment to the Constitution of the United States, Article I, Section 17, of the Constitution of North Carolina, G.S. 160-239, G.S. 160-255, G.S. 160-238, Chapter 366, Section 32(25), Public-Local Laws of 1939. However, the extension of the fire alarm system is properly limited to two miles from the present city limits under G.S. 160-238.

**3. Municipal Corporations § 3: Taxation § 9—**

Upon extension of the corporate limits of a municipality under legislative authority, the municipality acquires jurisdiction over the territory annexed and may levy and collect taxes on property embraced within the annexation, notwithstanding that a part of the taxes so collected may be used to pay municipal indebtedness incurred prior to the time of annexation, and in like manner the municipality may, under legislative authority and upon approval of its voters, issue bonds to finance extension of municipal facilities to the territory to be annexed and levy taxes to pay same prior to the fixed date of annexation.

**4. Constitutional Law § 10—**

Doubt as to the constitutionality of a statute authorizing the imposition of a tax, approved by the voters, must be resolved in favor of the constitutionality of the statute and tax.

PARKER, J., not sitting.

APPEAL by plaintiff from *Froneberger, J.,* at Chambers in Charlotte, North Carolina, 4 August 1958. From MECKLENBURG.

The plaintiff, a citizen and resident of the City of Charlotte, North Carolina, instituted this action in behalf of himself and other prop-

erty owners and taxpayers in said city, seeking to enjoin the defendant City of Charlotte, its Mayor and City Council, from issuing General Obligation Bonds to finance the extension of water, sewer and fire alarm services into the territory to be annexed to the City of Charlotte, from and after 31 December 1959, prior to said date of annexation.

This cause was heard pursuant to stipulations entered into by the parties by Froneberger, J., assigned to hold the courts of the Twenty-Sixth Judicial District, without a jury. A jury having been waived, the hearing was held at Chambers in Charlotte, North Carolina on 4 August 1958, and it was agreed that the court should find the facts and make its conclusions of law and enter judgment accordingly. The trial judge found the facts, made his conclusions of law and entered judgment, denying the plaintiff the relief demanded, except the defendants were enjoined from extending fire alarm service for more than two miles from the corporate limits of the city.

On 23 May 1957 the General Assembly of North Carolina enacted Chapter 802 of the 1957 Session Laws, amending the charter of the City of Charlotte so as to provide for the extended boundaries of said city. The Act provided for an election to be held on 15 July 1957 among the qualified voters of the City of Charlotte and the adjacent territory proposed to be annexed to said city; and further providing that if the election carried, the city limits of said city should be extended, as set out in the Act, from and after 31 December 1959. The special election was held and the extension of the city limits duly approved, and it is conceded that the election was properly called and conducted.

The territory to be annexed pursuant to said election comprises approximately thirty square miles, so that the area of the City of Charlotte will be substantially doubled by said extension of the city limits. The area to be annexed has a density of population of 1,357 per square mile, or a total population of approximately 41,000.

Section 6 of Chapter 802 of the Session Laws of 1957 provides: "Should said election carry, the City of Charlotte is hereby authorized and empowered to plan for extending and to extend, municipal public works into the territory coming into the city limits by virtue of said election. The City of Charlotte is granted the right to acquire the necessary lands in connection with such public works and to acquire property in connection therewith by condemnation, if necessary, under the present law governing condemnation of property within the present city limits of the City of Charlotte, which said law is hereby extended to cover such added territory."

On 12 March 1958 the City Council of the City of Charlotte enacted an ordinance duly authorizing, subject to the approval of the

voters, the issuance of $1,301,000 water bonds, $3,265,000 sanitary sewer bonds, and $134,000 fire alarm system bonds, for the purpose of providing funds for enlarging and extending such services within and without the city limits, including the territory to be annexed; and providing for a sufficient tax to pay the principal and interest on said bonds to be annually levied and collected. At the same time, said Council also duly adopted a resolution calling for a special bond election on 26 April 1958, and approved notice of such special bond election and an official ballot.

It is conceded that the election was duly called and conducted and that the qualified voters of the City of Charlotte approved the issuance of said bonds, including the levy of a tax to pay the interest and principal on such indebtedness.

The budget of the City of Charlotte for the fiscal year 1 July 1958 to 30 June 1959, as adopted by the City Council of the City of Charlotte on 16 July 1958, provides for the payment of approximately $62,158.00 in interest and bank commissions on said bonds during the current fiscal year.

On 16 July 1958 the City Council of the City of Charlotte levied a tax on all real and personal property in said city in order to raise the funds necessary to meet said interest and bank commissions. The defendants admit they intend to issue said bonds for the extension of said services to the territory to be annexed prior to 1 January 1960, and will, in addition to the tax heretofore levied to pay interest and bank commissions as hereinabove set out, levy a tax prior to 1 January 1960 for the payment of principal and interest on said bonds.

From the judgment entered the plaintiff appeals, assigning error.

*Taliaferro, Grier, Parker & Poe, Sydnor Thompson, attorneys for plaintiff.*

*John D. Shaw, attorney for defendants.*

DENNY, J. The plaintiff contends that the City of Charlotte is without authority to issue bonds and to levy and collect taxes from the citizens of the city for the purpose of extending water and sewer facilities and its fire alarm system to an area which is, at present, not within the city limits and will not become a part of the city until 1 January 1960. The plaintiff further contends that such expenditures would be in violation of both the Constitution of the United States and the Constitution of North Carolina, in that it would constitute the taking of property of the citizens of Charlotte without due process of law, and that such expenditures would not be for a public purpose.

It would seem, therefore, that the question posed for determination is simply this: May a municipal corporation, with legislative sanction,

issue bonds and levy taxes to meet the required payment of principal and interest thereon, and use the proceeds therefrom to finance the extension of water and sewer facilities and a fire alarm system into an area which is to be annexed to the municipality at a fixed future date, after the residents of the area to be annexed have approved the annexation and the citizens of the municipality have approved both the annexation and the issuance of the bonds?

We shall not undertake a *seriatim* discussion of all the appellant's exceptions. We shall, however, discuss the questions raised which are, in our opinion, essential to the proper disposition of the appeal.

The briefs filed in connection with this appeal cite no case from this or any other state involving a factual situation similar to that presented on this record. Neither have we been able to find such a case. Even so, the general law authorizes a municipality in this State to establish and maintain a sewer system. G.S. 160-239. A municipality is likewise authorized to maintain a waterworks system and to furnish water "to any person, firm or corporation desiring the same outside the corporate limits where the services can be made available by the municipality * * *." G.S. 160-255 (1957 Cum. Supp.).

G.S. 160-238 provides: "The governing body may provide, install, and maintain water mains, pipes, hydrants, and buildings and equipment, either inside or outside of the city limits, for protection against fire of property outside of the city limits, and within such area as the governing body may determine, not exceeding a boundary of two miles from the city limits, under such terms and conditions as the governing body may prescribe. * * * "

Furthermore, the charter of the City of Charlotte, as adopted in Chapter 366, Section 32, Subsection (25), Public-Local Laws of 1939, authorizes the city, "To establish systems of sewerage and works for sewage disposal, and to extend and build the same beyond the corporate limits when deemed necessary, to permit owners of residences or industrial plants outside the limits of the City of Charlotte to connect to the sewerage system of said City of Charlotte and to remove said sewage through its system as is now done for residents of said city, and to make such reasonable charges for such service as may be set by the city council; * * *." According to the testimony in the court below, approximately thirty-five per cent of the residents in the area to be annexed are presently served by the extension of the sewerage system of the City of Charlotte, and two-thirds of the homes in the area are supplied with city water through local water supply systems.

Moreover, we interpret Section 6 of Chapter 802 of the Session Laws of 1957, amending the charter of the City of Charlotte, to give the city the authority to extend its water and sewer lines into the area to be annexed, and to do so prior to 1 January 1960. This Section

authorizes the City of Charlotte, in the event the election shall carry, to annex the involved area, "to plan for extending and to extend, municipal public works into the territory coming (not which has been annexed) into the city limits by virtue of said election."

Section 6 also extends from the date of the ratification of the Act, being 23 May 1957, the law governing condemnation of property within the present city limits of the City of Charlotte to the additional area.

This entire Section was wholly unnecessary if it was not the legislative intent that the City of Charlotte should proceed immediately to provide these facilities within the area which is to become a part of the City of Charlotte on 1 January 1960. After an area is annexed to a municipality, it becomes a part of it and subject to all the debts, laws, ordinances and resolutions in effect on the date of the annexation. This is expressly so provided by statute. G.S. 160-449.

We think it reasonable to assume that the purpose in fixing 1 January 1960 as the date on which the area to be annexed should become effective, was to give the City of Charlotte a reasonable time to install these facilities so that they would be available to the residents of the area to be annexed at the time the annexation would become effective or as soon thereafter as practicable.

In light of the facts in this case, we are not impressed by the argument that the tax levy complained of constitutes a taking of the property of the citizens of the City of Charlotte without due process of law, in violation of both the Constitution of the United States and the Constitution of North Carolina. The expenditure of funds for the construction of water and sewerage facilities by a municipality, outside its corporate limits, if done pursuant to legislative authority, is for a public purpose and is not violative of the Fourteenth Amendment to the Constitution of the United States or of Article I, Section 17, of the Constitution of North Carolina. *Ramsey v. Commissioners,* 246 N.C. 647, 100 S.E. 2d 55; *Charlotte v. Heath,* 226 N.C. 750, 40 S.E. 2d 600; *Holmes v. Fayetteville,* 197 N.C. 740, 150 S.E. 624.

It is said in the last cited case, "If the defendant should attempt to pledge the faith of the city or to contract a debt or levy a tax for an enterprise conducted within the designated territory, the taxpayer would have ample remedy." Plaintiff contends that the foregoing statement should be construed as prohibiting the City of Charlotte from issuing the bonds involved in this action and from levying any tax in connection therewith. However, the plaintiff seems to have overlooked the fact that in addition to the legislative authority granted to the defendants, the qualified voters of the City of Charlotte have approved what the city is attempting to do.

In the case of *Dunn v. Tew, et al,* 219 N.C. 286, 13 S.E. 2d 536, the lands of the defendants were being sold for nonpayment of mu-

nicipal taxes. The property was located in an area that had been annexed by the plaintiff city and the defendants contended that their property was not subject to the full rate of tax levied, for that a part of the taxes would go toward payment of debts that were existing prior to the time of the annexation and from which the defendants derived no benefit. The holding of the Court is succinctly stated in the third headnote of the opinion as follows: "Where the corporate limits of a municipality have been extended by legislative act * * * the municipality has jurisdiction over the territory annexed and may levy and collect taxes on the property embraced therein, notwithstanding that the taxes so collected may be used to pay municipal indebtedness incurred prior to the time of the annexation * * *."

Certainly the citizens in the area to be annexed by the City of Charlotte will, beginning with the year 1960, be taxed to pay for indebtedness of the City of Charlotte, no part of which was expended for their benefit. G.S. 160-449.

The General Assembly has expressly authorized the extension of these facilities in the event the election carried and the qualified voters of the City of Charlotte, with full knowledge that the area involved would not be subject to the levy and collection of taxes until on and after 1 January 1960, approved the bond issue to finance the extension of the public utilities of the City of Charlotte into the area of approximately thirty square miles, which area will by the expiration of time, without any further legal steps being taken by anyone, become a part of the City of Charlotte on the date fixed in its charter, to wit, 1 January 1960. Doubtless the provision for the extension of these water and sewer facilities prior to the effective date of the annexation, may have had a material bearing on the result of the voting in this additional area, which is about equal to the area contained within the present corporate limits of the City of Charlotte.

In the case of *Briggs v. Raleigh*, 195 N.C. 223, 141 S.E. 597, the plaintiff undertook to restrain the City of Raleigh from issuing bonds which had been approved by the voters of the city. The proceeds from the sale of the bonds were to be used for the purpose of erecting buildings, etc., on land donated by the State to be used for a State Fair to be operated within five miles of the City of Raleigh. This Court held the expenditures to be for a public municipal purpose and that it was within the power of the city to issue said bonds. Stacy, C. J., in speaking for the Court, said: "Where the question is doubtful, as it is here, and the Legislature has decided it one way and the people to be taxed have approved that decision, it is the general rule of construction that the will of the lawmakers thus expressed and approved, should be allowed to prevail over any mere doubt of the courts."

In the instant case, upon the findings of fact made by the court

below, and which are supported by competent evidence, the court held that the plaintiff has not sustained his burden in showing that the legislative action upon which the defendants are relying is unconstitutional. The court further concluded as a matter of law that the issuing of bonds to extend the water and sewer systems as contemplated by the City of Charlotte, is not in violation of the Fourteenth Amendment to the Constitution of the United States, or of Section 17 of Article I or Section 3 of Article V of the Constitution of North Carolina. The court, however, held that the City of Charlotte should be restrained from extending the fire alarm system beyond two miles from the present city limits, as provided in G.S. 160-238. Judgment was accordingly entered.

The judgment of the court below is
Affirmed.

PARKER, J., not sitting.