W. C. UPCHURCH, ON BEHALF OF HIMSELF AND ALL OTHER TAXPAYERS OF THE CITY OF RALEIGH v. CITY OF RALEIGH, A MUNICIPAL CORPORATION.

(Filed 10 June, 1960.)

1. **Elections § 4: Municipal Corporations § 37— Proceeds of water and sewer bonds may be expended in newly annexed areas notwithstanding neither bond ordinance nor ballots disclosed such intent.**

Where there is no irregularity in the authorization of municipal bonds for its water and sewer systems, G.S. 160-379(b)(1), G.S. 160-379(d), G.S. 160-382, and in the city's notice of intent to annex certain areas it is stated that it intended to use certain of the proceeds of the bonds for the construction of water and sewer lines in areas intended to be annexed, the fact that neither the bond ordinance nor the ballots used in the election at which the issuance of the bonds was approved disclosed such intent does not affect the validity of the bonds, the city being authorized by its charter and G.S. 160-255 to extend its water and sewer facilities beyond its corporate limits and the Annexation Act specifically providing that it should not be necessary for the City to specify the location of any contemplated improvements.

2. **Pleadings § 24—**

Notwithstanding that a demurrer comes on to be heard prior to the expiration of time for filing answer, G.S. 1-161, the court may refuse plaintiff's motion for a continuance, interposed in order that he might file an amended complaint, when the hearing is more than five days after acceptance of service of the demurrer by the plaintiff, G.S. 1-129, although plaintiff, upon the sustaining of the demurrer, may thereafter apply for leave to amend. G.S. 1-131.

APPEAL by plaintiff from *Clark, J.,* March Civil Term, 1960 of WAKE.

This action was instituted on 11 March 1960 in the Superior Court of Wake County, North Carolina, by W. C. Upchurch, on behalf of himself and all other taxpayers of the City of Raleigh, against the City of Raleigh, a municipal corporation, for the purpose of having declared invalid two bond issues hereinafter referred to, and to restrain the City from applying or using the proceeds from said bond issues to construct water and sewer lines in areas which the City of Raleigh proposed to annex.

On 21 December 1959, the City adopted Ordinances Nos. 851 and 852, said ordinances authorized the issuance of $1,360,000 of water supply system bonds and $540,000 of sanitary sewer system bonds, respectively, and by its Resolution No. 950, called a special election on 23 February 1960 for the qualified voters of Raleigh to pass upon said bond issues.

On 22 and 29 December 1959, pursuant to statute, the City caused to be published in The Raleigh Times, a newspaper of general cir-

culation in said City, its "Notice of Intention to Apply to the Local Government Commission for Approval of Bonds" subject to the approval of the voters, the declared and stated purpose of said bonds being as follows:

"(1) $1,360,000 of bonds for the improvement and enlargement of the water supply system established and operated by the City to supply water to the City and its inhabitants, * * *.

"(2) $540,000 of bonds for the improvement and enlargement of the sanitary sewer system established and operated by the City, * * *."

Pursuant to the aforesaid notice the City on 31 December 1959, made written application to the Local Government Commission for approval of the aforesaid bond issues, and in its Exhibit A attached to said application, it declared that:

"The City now has authority to finance water system extension and improvement (to the extent of) $1,742,000 (1959 Bond Program). This program was designed to provide for some plant improvement, projects to strengthen the internal city system (Pitometer Study 1953 & 58) and to extend into those areas previously considered for annexation; i. e., areas to the northwest, north and southeast. As the total picture developed and the meaning of the new annexation law cleared, it became necessary to prepare for future extension and financing in the areas to the south and southwest as the City Council decided they should be included in this major annexation action. Thus, $700,000 is proposed to carry the large main system into the last two areas mentioned and $660,000 is to be used in all areas to begin the program of small line extension up and down the streets when needed and requested. Whereas the large main extension into these areas should satisfy the system need, some few years will be required to complete the small line system.

"Authority already exists which should satisfy the financing of the large sewer outfalls into the new areas (1959 Bond Program). $540,000 will begin the program of installing the small line system up and down the streets. Some few years will be required to complete the small line system."

Pursuant to said ordinances and resolution, a special election was held on 23 February 1960, at which the qualified voters of the City voted in favor of said bond issues in separate questions, the stated purposes of said bonds appearing on the ballots used at said election as recited in the ordinances. None of the bonds had, at the time of the institution of this suit, been issued, sold or delivered.

Thereafter, on 1 February 1960, acting pursuant to a new annexa-

tion law (G.S. 160-453.13 *et seq.*), the City adopted resolutions of intent to consider the question of annexing five certain areas to the City; and on 15 February 1960, as required by said law, it approved and made public its Annexation Report, dated February 1960, declaring its intent to annex certain designated areas then beyond the corporate limits of the City and to expend and use certain of the proceeds of the water and sewer bond issues to be voted on at the 23 February 1960 election as follows: (estimated costs of water and sewer lines into the designated areas omitted).

Neither in the bond ordinances nor on the ballots used at said election was there included any statement or declaration of the purpose or intent of the City to use the proceeds of said bond issues for the future annexation of said areas, as was contained in said Annexation Report and Notice of Intent.

The complaint alleges that it was the duty of the City in the conduct of said special election to submit the bond issues in plain, unambiguous and certain language clearly stating that the true intent and purpose of the City, if said election carried, to undertake to provide for the annexation of said areas into the City's corporate limits; and that such was the actual design and purpose for the City, for that:

"(a) In June and July 1959, it had conducted actual field surveys of the dwelling units in said areas;

"(b) On or about 26 November 1959, it had entered into a contract with an engineering firm to perform field surveys, investigations, plans and specifications for sewer outfall lines in certain of said areas;

"(c) At a special election held on 11 August 1959, the voters of the City had approved $1,742,000 of water bonds and $1,357,800 of sewer bonds, no part of which had yet been sold, issued or delivered."

The defendant filed a demurrer to the complaint on 16 March 1960 and caused the same to be set for hearing on the Motion Calendar for 28 March 1960. When the matter came on for hearing, the plaintiff orally moved for a continuance in order that he might file an amended complaint or an amendment to his complaint, pursuant to G.S. 1-161, before defendant's time for answering expired. The court denied plaintiff's motion and proceeded with the hearing. The defendant, in addition to its written demurrer, interposed a demurrer *ore tenus*. The court sustained both demurrers, and the plaintiff appeals, assigning error.

*Emanuel & Emanuel for plaintiff.*
*Paul F. Smith, William Joslin, Manning & Fulton for defendant.*

DENNY, J.  The complaint does not allege any irregularities in the legal procedures followed by the defendant in connection with the adoption of the bond ordinances involved, the publication of such ordinances, the ordinance calling for the bond election on 23 February 1960, or in the conduct of such election.

The plaintiff alleges the series of bonds approved at the election held on 23 February 1960 are not valid and legal obligations of the City of Raleigh because the bond ordinances, the publication of notice thereof and the ballots did not disclose that the proceeds to be derived therefrom were to be used for the construction of water and sewer lines in areas to be annexed within the corporate limits of the City of Raleigh, pursuant to G.S. 160-453.17.

The question posed for determination is simply this: May the proceeds from water and sewer bonds duly authorized by the voters of a municipality or any portion of such funds, be expended within areas annexed to the City after the date of such election when neither the bond ordinances nor the ballots used in said election disclosed an intent on the part of the municipality to so use such proceeds?

There is no contention that there was any irregularity in the authorization of the bonds approved by the voters of the City of Raleigh on 23 February 1960, provided the proceeds therefrom are expended for water and sewer lines within the corporate limits of Raleigh as such corporate limits existed on 23 February 1960. Even so, the defendant notified the citizens and taxpayers of the City of Raleigh when it published, as it was required by law to do, its Notice of Intent to annex certain areas, and further stated therein that it intended to use certain of the proceeds of the water and sewer bond issues to be voted on at the 23 February 1960 election, and gave the estimated amounts that would be expended for the construction of water and sewer lines in the areas designated therein. Therefore, the question for determination is limited to that posed hereinabove.

In order for a municipality, having a population of 5,000 or more persons, to comply with the provisions of Chapter 1009 of the 1959 Session Laws of North Carolina, it must follow the procedure outlined in the annexation statutes, G.S. 160-453.13 *et seq.* Section (e), subsection (3) of G.S. 160-453.17, provides that when a municipality passes its annexation ordinance pursuant to its Notice of Intent it must make, "A specific finding that on the effective date of annexation the municipality will have funds appropriated in sufficient amount to finance construction of any major trunk water mains and sewer outfalls found necessary in the report required by § 160-453.15

to extend the basic water and/or sewer system of the municipality into the area to be annexed, or that on the effective date of annexation the municipality will have authority to issue bonds in an amount sufficient to finance such construction. If authority to issue such bonds must be secured from the electorate of the municipality prior to the effective date of annexation, then the effective date of annexation shall be no earlier than the day following the statement of the successful result of the bond election."

It is provided in section (f) of G.S. 160-453.17: "From and after the effective date of the annexation ordinance, the territory and its citizens and property shall be subject to all debts, laws, ordinances and regulations in force in such municipality and shall be entitled to the same privileges and benefits as other parts of such municipality. * * *"

The defendant City of Raleigh in its charter as set forth in Chapter 1184 of the Session Laws of 1949, has been given the express authority in section 22, subsection (65), as follows: "To acquire, provide, construct, establish, maintain and operate a system of waterworks and a system of sewerage for the city and the citizens thereof, and to protect, control, and regulate the same by such adequate rules and regulations as may be deemed appropriate and expedient by the city counsel; and to extend the systems of waterworks and/or sewerage beyond the corporate limits; * * *" Moreover, all municipalities in North Carolina have been given the right to extend water and sewer facilities beyond the corporate limits of the municipality. G.S. 160-255 (1959 Cumulative Supplement).

The 1959 Annexation Act does not purport to require or authorize the expenditure of any funds in an area to be annexed when such proposed annexation is made subject to a favorable result in a bond election for funds with which to construct water and sewer lines in such area, until after the effective date of such annexation. However, we have been unable to find any requirement in the municipal Finance Act or any other statute which requires the bond ordinance or the ballot to specify in what area the funds are to be used if such funds are to be used in connection with an annexation plan pursuant to the 1959 Annexation Act.

It appears that the defendant has complied with G.S. 160-379 (b) (1), G.S. 160-379 (d), and all other pertinent statutes in connection with the authorization of the issuance of the bonds involved herein. It will be noted that G.S. 160-379 (b) (1) provides: "What Ordinance Must Show. — The ordinance shall state: (1) In brief and general terms the purpose for which the bonds are to be issued,

* * *"; and G.S. 160-379 (d) provides: "Need Not Specify Location of Improvement. — In stating the purpose of a bond issue, a bond ordinance need not specify the location of any improvement or property, or the kind of pavement or other material to be used in the construction or reconstruction of streets, highways, sidewalks, curbs, or gutters, or the kind of construction or reconstruction to be adopted for any building, for which the bonds are to be issued. A description in a bond ordinance of a property or improvement substantially in the language employed in § 160-382 of this subchapter to describe such a property or improvement, shall be a sufficiently definite statement of the purpose for which the bonds authorized by the ordinance are to be issued."

In *Thomasson v. Smith,* 249 N.C. 84, 105 S.E. 2d 416, the annexation procedure and the authorization of bonds to be issued pursuant thereto were set out in Chapter 802 of the Session Laws of 1957, which provided that in the event of a favorable election result on the question of annexation, the City of Charlotte was then authorized to call an election to determine whether or not the citizens of Charlotte would approve the issuance of approximately $4,500,000 worth of water and sewer bonds for the purpose of constructing water and sewer lines into the area to be annexed before the effective date of the annexation. Therefore, the intent to so use such proceeds was incorporated in the bond ordinance and on the ballot. The general law, however, as heretofore pointed out, does not require such information to be incorporated in the bond ordinance or to be set forth on the ballot. The statute requires the effective date of the annexation to be at least one day after the favorable result of the bond election, where the proceeds from the bond issue or issues are to be used in connection with the annexation plan. However, the effective date of an annexation may be fixed for any date within twelve months from the date of the adoption of the annexation ordinance. Subsection (4) of section (e), G.S. 160-453.17. In the instant case, it was stated in the oral argument before this Court that the areas described in the Notice of Intent to annex have been annexed by the City of Raleigh and that the effective date of such annexation was 31 March 1960. Furthermore, it has been made to appear that the Notice of Intent to annex these areas was published in the manner required by law.

There is no question raised in this action with respect to the validity of the annexation of the areas by the City of Raleigh pursuant to the provisions of our 1959 Annexation Act, this action having been instituted prior to the adoption of the annexation ordinance.

The plaintiff seeks, however, to restrain the issuance of the bonds authorized on 23 February 1960 in order to prevent the expenditures planned in the construction of water and sewer lines into the annexed areas for the reasons heretofore stated.

It is a matter of common knowledge that the City of Raleigh has heretofore issued and has outstanding many millions of dollars in bonds covering the cost of the construction of paved streets, sidewalks, waterworks, and sewer systems, not one dollar of which was expended for street paving or the construction of sidewalks in the annexed areas, and but little if any of the proceeds from water and sewer bonds heretofore issued by the City of Raleigh have been expended for water or sewer lines in the annexed areas. However, the citizens, firms and corporations located within these annexed areas will be required in the future to pay their full share of the taxes necessary for the payment of the interest on these outstanding bonds and for the payment of the principal on such bonds as they fall due. *Dunn v. Tew*, 219 N.C. 286, 13 S.E. 2d 536; *Thomasson v. Smith, supra.* Unquestionably, it was this fact that led the General Assembly to require a municipality to make provision for the extension of water and sewer lines into such annexed areas before permitting the proposed annexation or annexations to be made pursuant to the 1959 Annexation Act.

In our opinion, the court below properly sustained the demurrers interposed by the defendant.

The second question posed on this appeal is whether or not the court below committed error in refusing to continue the hearing on the demurrers, calendared on the Motion Docket of the Superior Court of Wake County for hearing 28 March 1960, in order to give the plaintiff time to file an emended complaint or an amendment to his complaint.

We are not inadvertent to the provisions of G.S. 1-161. Neither are we unmindful of the provisions of G.S. 1-129, which provide: "If a demurrer is filed the plaintiff may be allowed to amend. If plaintiff fail to amend within five days after notice, the parties may agree to a time and place of hearing the same before some judge of the superior court, and upon such agreement it shall be the duty of the clerk of the superior court forthwith to send the complaint and demurrer to the judge holding the courts of the district, or to the resident judge of the district, who shall hear and pass upon the demurrer: Provided, if there be no agreement between the parties as to the time and place of hearing the same before the judge of the superior court, then it shall be the duty of the clerk of the superior court to

send the complaint and demurrer to the judge holding the next term of the superior court in the county where the action is pending, who shall hear and pass upon the demurrer at that term of the court. * * *"

The plaintiff not having amended his complaint within five days after the demurrer was filed on 16 March 1960, on which date his attorneys accepted service of a copy of the written demurrer, the defendant had the right to have the demurrer ruled upon after the lapse of five days therefrom.

Therefore, the ruling of the court below in declining to continue the hearing on the demurrers interposed by the defendant will be upheld without prejudice to the right of the plaintiff to apply for leave to amend, as provided in G.S. 1-131.

The judgment of the court below is

Affirmed.