STATE OF NORTH CAROLINA v. JOHN TENORE

No. 77

(Filed 14 January 1972)

1. **Indictment and Warrant § 9— motion to quash — question presented — sufficiency of warrant**

   A motion to quash is a proper method of testing the sufficiency of the warrant to charge a criminal offense; it is not a means of testing the guilt or innocence of the defendant with respect to a crime properly charged.

State v. Tenore

**2. Obscenity— obscene dancing — prosecution — sufficiency of the warrant — county ordinance**

 A warrant charging that defendant unlawfully permitted . on the premises of the Tempo Lounge, over which he has control, a nude and obscene dance of a named female person, in the presence of one or more male persons wherein she showed her breasts with less than a fully opaque covering of portions thereof below the top of the complete nipple area including the areola, the Tempo Lounge being a public or private place to which the public is invited, such offense being in violation of the county ordinance, *held* sufficient to charge a violation of the county ordinance prohibiting such conduct.

**3. Indictment and Warrant § 9— sufficiency of the warrant — requisite**

 A warrant must be sufficiently definite so as to enable the defendant to prepare his defense, to enable the court to proceed to judgment, and to bar a subsequent prosecution for the same offense. G.S. 15-153.

**4. Obscenity; Counties § 1— county ordinance prohibiting obscene dancing — preemption by state law**

 A county board of commissioners had no authority to adopt an ordinance prohibiting the presentation of a nude or obscene dance or exhibition—the ordinance making it a misdemeanor, punishable by a fine not to exceed $50.00 or imprisonment not to exceed 30 days, for any person "as owner, manager, lessee, director, promoter, or agent" to permit "the premises over which he has control to be used for any . . . purposes of obscenity or nudity" as defined in the ordinance— since the General Assembly has preempted the field by enactment of a state-wide statute which prohibits and punishes the precise type of conduct prohibited by the ordinance. [former] G.S. 14-190; G.S. 14-190.1 to G.S. 14-190.9; G.S. 153-9(55); G.S. 160A-174, -181.

**5. Statutes § 8— prospective effect of statute — county ordinances**

 The repeal of a state-wide law which during its life prohibited the enactment of a county ordinance is prospective in this respect and does not breathe life into an ordinance which was beyond the authority of the ordaining body when it was adopted.

**6. Counties § 2— county commissioners — extent of legislative authority**

 A county board of commissioners has no legislative authority not granted to it expressly or by necessary implication from expressly granted powers.

**7. Criminal Law § 1— statutory offense — authority of legislating body**

 One may not be tried and convicted of a statutory offense if, at the time of his trial, the legislative body which declared his conduct in question to be a crime had no authority to do so.

APPEAL by defendant from the judgment of the Court of Appeals, reported in 11 N.C. App. 374, 180 S.E. 2d 115, reversing the judgment of *Copeland, S.J.,* at the 21 September 1970 Special Criminal Session of ONSLOW.

The defendant was tried in the District Court of Onslow County upon a warrant charging him as follows:

"The undersigned, W. C. Jarman, being duly sworn, complains and says that at and in the county named above and on or about the 21st day of May, 1970, the defendant named above did unlawfully, wilfully, as owner, manager, director and promotor permit on the premises of the Tempo Lounge, over which he has control, a nude and obscene dance, exhibition, and performance of one Virginia P. Lewis, a female person, in the presence of one or more male persons wherein she showed her breasts with less than a fully opaque covering of portions thereof below the top of the complete nipple area including the areola, said Tempo Lounge being a public or private place to which the public is invited.

"The offense charged here was committed against the peace and dignity of the State and in violation of law, Section 1-B, An Ordinance making it a misdemeanor to permit recreations, amusements, exhibitions and entertainment detrimental to the public good (Onslow County)."

Defendant's brief states he moved in the district court to quash the warrant, which motion was there denied. He was found guilty in the district court and sentence was imposed. He appealed to the superior court and was there brought to trial upon the warrant. Before entering a plea to the charge, he moved to quash. The motion was allowed by the superior court on the following grounds:

"1. That Section 1-B upon which warrant is based is in violation of the United States Constitution and the Constitution of North Carolina.

"2. The ordinance is vague and ambiguous.

"3. The warrant fails to state a proper cause of action."

The State appealed to the Court of Appeals, which reversed the judgment of the superior court without stating any reason for its decision.

The original record filed in the Court of Appeals shows that the Board of Commissioners of Onslow County adopted an ordinance, filed for registration and duly recorded 27 April

1970 in the county's Ordinance Book No. 1, which ordinance reads as follows:

"AN ORDINANCE MAKING IT A MISDEMEANOR TO DO OR PERMIT RECREATIONS, AMUSEMENTS, EXHIBITIONS AND ENTERTAINMENT DETRIMENTAL TO THE PUBLIC GOOD

"PREAMBLE: That whereas, it is the opinion of the governing body of Onslow County and in the interest of public morals, welfare and public good of the citizens of Onslow County, and especially for the benefit of our youth and young people residing in Onslow County, to prohibit certain recreations, amusements, exhibitions and entertainment;

"BE IT ORDAINED by the Board of Commissioners of Onslow County:

"SECTION 1. Presentation of an obscene or nude play, dance, exhibition or other performance or exhibition of private parts of a person creating a lewd, lascivious, or lustful atmosphere.

"(A) DEFINITION OF TERMS.

As used in this section:

"(1) 'Nude' or 'Nudity'—means the showing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the complete nipple area including the areola.

"(2) 'Private Parts'—As used herein, private parts shall include not only male and female genitals but shall also include the breasts of a physically developed female.

"(3) 'Obscene' or 'Obscenity'—A thing is obscene if considered as a whole; its predominant appeal is the prurient interest, i.e.,

"(a) A shameful or morbid interest in nudity, sex or excretion and it goes substantially beyond customary limits of candor in description or presentation of such matters; and

"(b) Is patently offensive to prevailing standards in the adult community as a whole; and

State v. Tenore

"(c) Is utterly without redeeming social importance.

"(B) PRESENTATION OF OBSCENE OR NUDE PLAY, DANCE, EXHIBITION, OR OTHER PERFORMANCE:

"Any person who in any place willfully exposes or shows any obscene or nude play, dance, exhibition or other performance in the presence of one or more persons of the opposite sex or who aids or abets in any such act or who procures another to so perform or takes part in such exhibition or performance where such obscene or nude play, dance, exhibition or other performance is conducted in any public place, street, highway or other public or private place to which the public is invited; or any person who as owner, manager, lessee, director, promoter, or agent permits the premises over which he has control to be used for any such purposes of obscenity and nudity, shall be guilty of a midemeanor.

"(C) INDECENT PUBLIC EXPOSURE:

"Any person who shall willfully make any indecent public exposure of the private parts of his or her person in any public place, street, or highway shall be guilty of a misdemeanor.

"SECTION 2. Separate Violations.

"Each violation of this Ordinance shall constitute a separate offense.

"SECTION 3. Penalty.

"Any person found guilty of violation of this Ordinance shall be punishable by a fine not to exceed $50.00 or imprisonment not to exceed thirty (30) days.

"SECTION 4. Severability.

"If any section or provision of this Ordinance shall be held invalid by a court of competent jurisdiction, such invalidation shall not affect the remaining or other sections or provisions to the end that provisions of this Ordinance are severable.

"SECTION 5. Effective date of Ordinance.

"This Ordinance shall become effective at the end of twenty (20) days following date of Publication of this Ordinance in compliance with N.C. G.S. 153-9 (55)."

A written stipulation of the parties, added to the record in this Court, sets forth that the minutes of the Board of Commissioners of Onslow County show that the motion to adopt the ordinance was carried unanimously on the first reading at a meeting of the Board held on 2 March 1970 and was again carried unanimously on a second reading at a meeting of the Board held on 6 April 1970, that such motion directed publication of the ordinance on 7 April 1970 and further directed that the ordinance take effect on 27 April 1970. The stipulation further shows that the ordinance was published in the Jacksonville Daily News, a newspaper of Onslow County, on 7 April 1970, twenty days prior to its effective date.

A further stipulation of the parties, added to the record in this Court, states that a notice of public hearing upon the proposal to adopt said ordinance, which hearing was called by the Board at its meeting on 2 March 1970, was published in the said newspaper on 9 March 1970. This notice set forth the substance of the then proposed ordinance and stated that such hearing would be had on 16 March 1970; i.e., twenty-one days prior to the meeting of the Board at which the motion to enact the ordinance was passed by the Board of Commissioners on its second reading.

*Attorney General Robert Morgan and Assistant Attorney General Christine Y. Denson for the State.*

*Turner and Harrison by J. Harvey Turner for defendant.*

LAKE, Justice.

[1] "A motion to quash is a proper method of testing the sufficiency of the warrant * * * to charge a criminal offense. It is not a means of testing the guilt or innocence of the defendant with respect to a crime properly charged." *State v. Cooke, et al.,* 248 N.C. 485, 489, 103 S.E. 2d 846. We do not have before us on this appeal any question concerning the sufficiency of evidence to establish the defendant's guilt of the offense charged in the warrant, if any, for no evidence has been offered. For the purposes of this appeal, we take the facts to be as alleged in the

warrant. The questions to be determined are: (1) Does the conduct of the defendant, so alleged, constitute a violation of the ordinance adopted by the County Board of Commissioners? and (2) if so, may the Board of Commissioners of the County, by adopting such ordinance, make such conduct a criminal offense?

[2]  The warrant plainly charges: The Tempo Lounge is a public place or a private place to which the public is invited; the defendant, as owner, manager, director and promoter of the Tempo Lounge, has control of the premises on which it is located; as such, he unlawfully and wilfully permitted on the premises of the Tempo Lounge, in the presence of one or more male persons, "a nude and obscene dance, exhibition and performance" by Virginia P. Lewis, a female person, wherein she "showed her breasts with less than a fully opaque covering of portions thereof below the top of the complete nipple area including the areola;" such permission by the defendant was in violation of Section 1-B of the County Ordinance.

Section 1-B of the County Ordinance provides that it shall be a misdemeanor for any person, as owner, manager, lessee, director or promoter to permit premises over which he has control to be used for "any such purposes of obscenity and nudity." The phrase "any such purposes of obscenity and nudity" is made clear by reference to the first clause of Section 1-B of the ordinance, which makes it a misdemeanor for any person, in the presence of one or more persons of the opposite sex, wilfully to show any "obscene" dance or to take part in such exhibition or performance conducted in any public place or any private place to which the public is invited. The term "obscene," "obscenity," "nude" and "nudity" are defined in Section 1-A of the ordinance. The appropriate definition is to be read into Section 1-B of the ordinance wherever such word appears.

[2, 3]  There is nothing vague or ambiguous about what the warrant charges the defendant with having done. It is impossible to believe that the reading of this warrant did not make the defendant fully aware of what he stands charged with having permitted Virginia P. Lewis to do on the premises of the Tempo Lounge on 21 May 1970. The reference in the warrant to the section of the ordinance alleged to have been violated, together with the above stated recitals of fact contained therein, is sufficient to charge the offense. *State v. Walker,* 179 N.C. 730, 102 S.E. 404. See also, *State v. McGowan,* 243 N.C. 431, 90 S.E. 2d 703. The charge is sufficiently definite to enable the defend-

ant to prepare his defense, to enable the court to proceed to judgment and to bar a subsequent prosecution for the same offense. This is the test of the sufficiency of a warrant as to the definiteness of its allegations. G.S. 15-153; *State v. Sparrow,* 276 N.C. 499, 510, 173 S.E. 2d 897; *State v. Banks,* 263 N.C. 784, 140 S.E. 2d 318; Strong, N.C. Index 2d, Indictment and Warrant, § 9.

[4] We find no basis for the conclusion of the superior court that the ordinance is vague and ambiguous or for its conclusion that the warrant fails to state a violation of the ordinance. There remains for consideration the more serious question of whether the Board of Commissioners of Onslow County had authority to adopt an ordinance making such conduct by the defendant a criminal offense. We are forced to the conclusion that it did not have such authority, for the reason that the General Assembly preempted this field by enactment of a statewide statute making criminal, and providing for the punishment of, the precise type of conduct with which the defendant is charged in this warrant.

In *State v. Furio,* 267 N.C. 353, 148 S.E. 2d 275, we said, "[W]here the Legislature has enacted a statute making an act a criminal offense, a city may not adopt an ordinance dealing with the same conduct." In *State v. Brittain,* 89 N.C. 574, this Court, speaking through Justice Merrimon, later Chief Justice, said: "Nor can municipalities, by ordinances, create offenses known to the general laws of the State, and provide for the punishment of the same, unless they have special authority so to provide conferred either by some general or special statute. Hence, when an offense is indictable in the superior court, a city or town ordinance, making the same act, or substantially the same act, an offense punishable by fine or imprisonment, such ordinance is void. It may be that the legislature has power to authorize a town to make an offense against the state a separate offense against the town, but this could be done only by an express grant of authority." Accord: *State v. Dannenberg,* 150 N.C. 799, 63 S.E. 946; *State v. Langston,* 88 N.C. 692.

In *State v. Langston, supra,* the defendant was convicted in the mayor's court of the City of Goldsboro upon a warrant charging violation of a city ordinance which forbade any person, having a license, to sell spirituous liquors on the Sabbath and imposed a fine of $20.00 for such offense. A state-wide statute

State v. Tenore

made it a misdemeanor, punishable by fine or imprisonment in the discretion of the court, for any person to sell spirituous or malt liquors on Sunday except on the prescription of a physician and for medical purposes. On appeal to the superior court, the action was dismissed for want of jurisdiction in the mayor's court. This Court affirmed the superior court, saying through Chief Justice Smith:

> "This statute, more comprehensive in its scope than the ordinance, embracing as well those who have not, as those who have, license to sell, and involving the same criminal act for which is prescribed a punishment by fine or imprisonment at the discretion of the court, must supersede the latter.

> "The rule is thus stated as a deduction from the decided cases: 'A general grant of power, such as a mere authority to make by-laws, or to make by-laws for the good government of the place, and the like, should not be held to confer authority upon the corporation to make an ordinance punishing an act; for example, an assault and battery, which is made punishable as a criminal offense by the laws of the State.' 1 Dill. on Mun. Corp., § 302. The power conferred upon the municipal body is presumed to be in subordination to a public law regulating the same matter for the entire state, unless a clear intent to the contrary is manifest."

By G.S. 153-9(55) the General Assembly conferred upon the boards of commissioners of the several counties power to adopt "ordinances supervising, regulating, or suppressing or prohibiting in the interest of public morals, comfort, safety, convenience and welfare, public recreations, amusements and entertainments, and all things detrimental to the public good; and ordinances in exercise of the general police power not inconsistent with the Constitution and laws of the State or the Constitution and laws of the United States." Similar authority was conferred upon all cities by G.S. 160-200(6) and G.S. 160-200(7), now repealed, and is presently conferred thereon by G.S. 160A-174 and G.S. 160A-181.

In *Whitney Stores v. Clark,* 277 N.C. 322, 327, 177 S.E. 2d 418, this Court, speaking through Chief Justice Bobbitt, said, concerning G.S. 153-9(55): "The Act does not confer or withhold

authority in respect of specific activities; on the contrary, it confers authority to enact ordinances in the exercise of the general police power. In this respect, the 1969 Act is similar to the statutes which confer general police power upon cities and towns."

With reference to cities and towns, the General Assembly of 1971 provided in G.S. 160A-174(b), "The fact that a State or federal law, standing alone, makes a given act, omission, or condition unlawful shall not preclude city ordinances requiring a higher standard of conduct or condition." In *State v. Furio, supra,* we said, with reference to the authority conferred upon cities by the former statutes, G.S. 160-200(6) and G.S. 160-200(7), that it could not be "fairly implied from these statutes that the Legislature intended to preempt the entire subject of obscene displays and publications so as to forbid a city to enact an ordinance, otherwise within its authority, which forbids publications or displays neither forbidden nor permitted by these statutes." Thus, the above quoted provision of G.S. 160A-174(b) reaffirms our conclusion in *State v. Furio, supra,* that, notwithstanding the existence of a general state-wide law relating to obscene displays and publications, a city may enact an ordinance prohibiting and punishing conduct not forbidden by such state-wide law. As we noted in *Whitney Stores v. Clark, supra,* the authority conferred by G.S. 153-9(55) upon the boards of commissioners of the respective counties is the same as that conferred upon cities and towns by G.S. 160-200(6) and G.S. 160-200(7) now brought forward into G.S. 160A-174 and G.S. 160A-181.

The 1971 General Assembly repealed G.S. 14-189 to G.S. 14-190, inclusive, and enacted G.S. 14-190.1 to G.S. 14-190.9, state-wide laws relating to obscene literature and exhibitions and to indecent exposure. We find nothing therein which expresses or indicates an intent by the General Assembly to preclude cities and towns or counties from enacting and enforcing ordinances "requiring a higher standard of conduct or condition" within their respective jurisdictions.

We must, therefore, compare the ordinance of Onslow County here in question with the state-wide law to determine whether the ordinance, as in *State v. Furio, supra,* undertakes to prohibit and punish, with reference to the charge in the warrant before us, conduct which is not forbidden by the state-

wide statute, and thus to require "a higher standard of conduct or condition," or undertakes to prohibit and punish the identical conduct dealt with by the state-wide statute.

The ordinance in question makes it a misdemeanor, punishable by a fine not to exceed $50.00 nor imprisonment not to exceed 30 days, for any person "as owner, manager, lessee, director, promoter, or agent" to permit "the premises over which he has control to be used for any * * * purposes of obscenity and nudity" as defined in the ordinance.

G.S. 14-190, which was in effect when the Board of Commissioners of Onslow County adopted the ordinance in question, provided:

> "Any person who in any place wilfully exposes his person, or private parts thereof, in the presence of one or more persons of the opposite sex whose person, or the private parts thereof, are similarly exposed, or who aids or abets in any such act, or who procures another so to expose his person, or the private parts thereof, or take part in any immoral show, exhibition or performance where indecent, immoral or lewd dances or plays are conducted in any booth, tent, room or other public or private place to which the public is invited; *or any person, who, as owner, manager, lessee, director, promoter or agent, or in any other capacity, hires, leases or permits the land, buildings, or premises of which he is owner, lessee or tenant, or over which he has control, to be used for any such immoral purposes, shall be guilty of a misdemeanor.* * * * Any person violating any provision of this section shall be punishable by a fine not to exceed five hundred dollars ($500.00), imprisonment for not more than six months, or both." (Emphasis added.)

Thus, the state-wide statute in effect at the time the ordinance in question was adopted dealt specifically with the identical conduct with which this defendant is charged in the warrant as a violation of the county ordinance.

[5] Since the Board of Commissioners of the county could not, at the time they adopted this ordinance, enact a valid ordinance forbidding the conduct with which the defendant is charged in this warrant, the ordinance, in that respect, is void and does not support the warrant. It is immaterial that, subsequently,

G.S. 14-190 was repealed, for the repeal of a state-wide law which, during its life, prohibited the enactment of a county ordinance is prospective in this respect and does not breathe life into an ordinance which was beyond the authority of the ordaining body when it was adopted.

Furthermore, G.S. 14-190.9, the 1971 enactment which replaced G.S. 14-190, provides:

> "Any person who shall wilfully expose the private parts of his or her person in any public place and in the presence of any other person or persons, of the opposite sex, or aids or abets in any such act, or who procures another to perform such act; *or any person, who as owner, manager, lessee, director, promoter or agent, or in any other capacity knowingly hires, leases or permits the land, building, or premises of which he is owner, lessee or tenant, or over which he has control, to be used for purposes of any such act,* shall be guilty of a misdemeanor punishable by a fine not to exceed five hundred dollars ($500.00), imprisonment for not more than six months, or both." (Emphasis added.)

Thus, it is apparent that the present state-wide law also deals specifically with the precise conduct with which the defendant is charged in this warrant pursuant to the county ordinance.

[6, 7] A county board of commissioners, like the Congress of the United States, and unlike the General Assembly of North Carolina, has no legislative authority not granted to it expressly or by necessary implication from expressly granted powers. *Surplus Company v. Pleasants, Sheriff,* 264 N.C. 650, 654, 142 S.E. 2d 697; *Ramsey v. Commissioners of Cleveland,* 246 N.C. 647, 100 S.E. 2d 55. One may not be tried and convicted of a statutory offense if, at the time of his trial, the legislative body which declared his conduct in question to be a crime had no authority to do so. *United States v. Chambers,* 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763. The defendant has not yet been tried for the offense charged in the warrant. Since, even if the Board of Commissioners of Onslow County formerly had authority to enact an ordinance making the conduct charged in this warrant a criminal offense, such authority has been withdrawn by the enactment of G.S. 14-190.9, the defendant cannot now be tried and convicted under this warrant.

It will be observed that the state-wide statute permits a substantially greater punishment for the offense than that imposed by the ordinance.

We do not have before us and we express no opinion as to the liability of the defendant to prosecution for violation of G.S. 14-190, which was in effect at the time of the conduct alleged in the warrant. Likewise, we do not have before us and express no opinion with reference to the validity of the ordinance in question concerning any matter or conduct other than the alleged conduct of this defendant as set forth in this warrant. Thus, we express no opinion as to whether the definition of "obscene" and "obscenity" contained in this ordinance establishes a "higher standard of conduct or condition" (see G.S. 160A-174) than the "contemporary national community standards" (see G.S. 14-190.1(b)) so as to permit a prosecution under it for conduct which would not violate the state-wide statute. Nor do we express any opinion as to whether, in accordance with the decisions of the Supreme Court of the United States, a county or municipal ordinance, otherwise valid, may constitutionally prohibit and make punishable an exhibition or the dissemination of materials found to be "obscene" under the standards of the community wherein such ordinance applies, though not "obscene" as judged by the "contemporary national community standards."

In *Manual Enterprises v. Day, Postmaster General of the United States*, 370 U.S. 478, 82 S.Ct 1432, 8 L.Ed. 2d 639, the question was as to the right of the Postmaster General, under an Act of Congress, to bar certain materials from the mail. The decision was that the Act of Congress should not be construed to confer this power. It was in that case that the term "national community standard" with reference to obscenity originated. There was no opinion in that case concurred in by a majority of the justices. The concept of a national community standard was mentioned only in the opinion of Mr. Justice Harlan, in which only Mr. Justice Stewart joined. Mr. Justice Harlan said:

"There must first be decided the relevant 'community' in terms of whose standards of decency the issue must be judged. We think that the proper test under this *federal* statute, *reaching as it does all parts of the United States* whose population reflects many different ethnic and cul-

tural backgrounds, is a national standard of decency." (Emphasis added.)

The leading case with reference to the constitutionality of a statute dealing with the dissemination of obscenity is *Roth v. United States and Alberts v. California* (decided together), 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed. 2d 1498. There, the standard adopted was the "contemporary community standards." (Page 488-9). Our research has disclosed no decision of the United States Supreme Court holding that a state statute or a city or county ordinance must limit its reach to conduct, exhibitions or the dissemination of materials "obscene" under the contemporary *national* standard.

For the reasons above stated, the judgment of the superior court quashing the warrant in this case was correct and the Court of Appeals erred in reversing it. The matter is, therefore, remanded to the Court of Appeals, for the entry by it of a judgment affirming the judgment of the superior court.

Reversed and remanded.