**Patsy WOOD and F & S Enterprises (trading as "Bobby's Lounge"), Plaintiffs,**

v.

**Thomas F. MOORE, Jr., Solicitor of Mecklenburg County, and all Assistant Solicitors in his employ, et al., Defendants.**

**Civ. A. No. C-C-72-246.**

United States District Court, W. D. North Carolina, Charlotte Division.

Nov. 1, 1972.

**30**

Arthur Goodman, Jr., and Howard J. Greenwald, Levine, Goodman & Murchison, Charlotte, N. C., for plaintiffs.

Charles A. Lloyd, Asst. Atty. Gen., N. C. Dept. of Justice, Raleigh, N. C., for defendants.

McMILLAN, District Judge.

This case was heard upon due notice on November 1, 1972, upon the application of the plaintiffs for injunctive relief against enforcement of a Charlotte city ordinance banning female nudity, the so-called "topless" ordinance.

Patsy Wood is a "topless" dancer at "Bobby's Lounge" in Charlotte; it was stipulated that in her performances her breasts are exposed within the purview of Charlotte city ordinance 13–31, which was adopted on or about October 16, 1972, effective November 1, 1972, and which reads as follows:

*Sec. 13–31. Nudity*

It shall be unlawful for any female person to appear nude as defined below in the presence of one or more persons of the opposite sex in any public place, street, highway, or other public or private place where the public is invited.

For the purposes of this section, the following terms shall be defined as follows:

(1) "Nude" or "Nudity"—means the showing of the breast or breasts of a physically developed female with less than a fully opaque covering of any portion thereof below the top of the complete nipple area including the areola.

(2) "Private place"—means an establishment to which the public is invited or entry to which is gained by means of a membership card.

Bobby's Lounge is a private business which affords drinks and other entertainment for pay to adults only; the topless dancing exhibitions can only be viewed by the paying customers. The entertainment, according to the allegations, has no overtones of obscenity or pandering.

The allegations of the complaint are that if the ordinance is enforced it will

put Patsy Wood out of employment and will ruin the enterprise for which she works. Topless dancing is alleged to be the major entertainment and the allegations adequately support a finding that enforcement of the ordinance will result in great and irreparable and immediate harm. Without topless dancing it is alleged the enterprise can make no profit.

Bad faith is alleged in the adoption of the ordinance (1) similar to one previously found unconstitutional by a state court judge in State v. Tenore, 280 N.C. 238, 185 S.E.2d 644 (1972); (2) without expectation of securing valid convictions; (3) for purpose of harassing plaintiffs and others; (4) against the advice of city attorneys who expressed doubts as to the validity of the proposed ordinance; and (5) in the face of opinion to the same effect by a member of the Council, also a lawyer, and other members of the Council, some of whom said they thought the law would be invalid.

Plaintiffs also allege vagueness in the terms of the ordinance and overbreadth in its coverage; and it is true that as drawn the ordinance is subject to many bizarre and (it is hoped) unintended interpretations.

Since no criminal prosecution is pending, the case does not present the "hard-nosed" issues which were litigated in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) and Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which dealt with injunction against pending state criminal prosecutions. However, it is incumbent upon this court to consider whether its equity jurisdiction should be exercised or whether upon grounds of comity, abstention or federalism the court should refuse to act even though constitutional rights might be suppressed by the ordinance. See Mitchum v. Foster, 407 U.S. 225, 243, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

 Dancing, even "topless" if not obscene, is a type of expression entitled to protection under the guaranties of the First and Fourteenth Amendments. La Rue v. California, 326 F.Supp. 348 (Central District of California, 1971); In re Giannini, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P.2d 535 (1968), cert. denied, 395 U.S. 910, 89 S.Ct. 1743, 23 L.Ed.2d 223 (1969); Southeastern Promotions, Limited, et al. v. City of Charlotte, et al., 333 F.Supp. 345 (W.D.N.C.1971) ("Hair"), and cases cited; Bruno v. City of Kenosha, 333 F.Supp. 726, 730 (D.Wis.1971). The vagueness and overbreadth contentions of the plaintiffs. while they could be rationalized out of existence, are of sufficient seriousness that they merit consideration in deciding whether to abstain or not. First Amendment rights are entitled to protection even where state criminal proceedings have already begun. Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965). The threat to the plaintiffs is of irreparable injury which is both great and immediate; and there is no adequate remedy at law. The presence of the ordinance on the books and the announced threats of the defendants to start enforcing the ordinance at midnight on the morning of November 1, 1972, the effective hour of the ordinance, constitute a great, irreparable and immediate threat to the exercise of First and Fourteenth Amendment freedoms. The ordinance on its face appears to be unconstitutional, and as applied to the activities of the plaintiffs described in the complaint it would result in an unconstitutional deprivation of rights of free expression to the consenting, paying adults who are the only observers of the conduct in question. The ordinance may be, as suggested by one of its framers, "responsive to the citizens," but responsiveness to those citizens who may have sought its passage is of considerably less significance under the law of this land than responsibility of the city government to the Constitution of the United States and to the people whose personal liberties the Constitution protects.

This is neither an advertisement for Patsy Wood and Bobby's Lounge nor an apology for nude dancing, and it is not written under any illusion that nude dancing is proper entertainment for children in the public parks nor that it necessarily promotes the strictest of puritan morality. Nor is it written under any personal belief that topless dancing is any great uplifting moral force in our society.

It has become apparent, however, throughout human history that personal morality (short of acts which are both immoral and harmful to non-participating bystanders) is a personal matter to be promoted by family and religious and other personal training and personal choice, and that man has never succeeded in legislating for himself or for posterity any particular pattern or scheme for determining "proper" exposure of the human anatomy to the curious eye. Perhaps nothing illustrates this better than the thousands of objects of art throughout the world which were subjected to systematic mutilation and then application of fig leaves in strategic spots to conform to later official views of propriety. What this does for public morality has never yet been made clear. As applied to the present case, what it [the ordinance] does to the constitutional rights of the plaintiffs, if the allegations of the complaint are true, is obvious; it infringes them and ought to stop.

The request for a temporary restraining order and for a preliminary injunction is allowed, and pending final trial on the merits the defendants are restrained from enforcing the provisions of Section 13–31 of the Code of the City of Charlotte.