STATE OF NORTH CAROLINA v. ROBERT BOYD KING

No. 69

(Filed 15 May 1974)

1. Obscenity— indecent exposure — insufficiency of warrants

In a prosecution for indecent exposure, warrants which failed to charge that exposure of private parts was "in the presence of any other person or persons, of the opposite sex" were fatally defective and should have been quashed. G.S. 14-190.9.

2. Obscenity— operator of night club — violator of indecent exposure statute

Defendant who operated a night club at which nude dancing took place was subject to prosecution under G.S. 14-190.9, since the conduct for which he was arrested—namely, aiding or abetting other persons in wilfully exposing their private parts in the presence of other persons of the opposite sex and in a public place—was expressly proscribed by that statute.

3. Obscenity— indecent exposure statute — unwilling viewers not required for violation

There is nothing whatsoever in the present N. C. indecent exposure statute which in any way requires the viewers of the exposure of one's private parts to be unwilling observers.

ON *certiorari* to review the decision of the North Carolina Court of Appeals reported in 20 N.C. App. 505, 201 S.E. 2d 724 (1974), reversing the judgments of *Crissman, J.*, at the 9 April 1973 Regular Criminal Session of GUILFORD Superior Court, Greensboro Division.

Defendant was initially tried in Guilford District Court upon four separate warrants, each of which charged that on or about 22 February 1973 defendant

"did unlawfully, wilfully, aid and abet in the act of indecent exposure by knowingly allowing and permitting [naming one of the four females involved] to expose her private parts at the Rathskeller, 716 West Market Street, Greensboro, N. C., a public place, and did allow this premises which he has control over to be used for the purpose of such an act.

"The offense charged here was committed against the peace and dignity of the State and in violation of law G.S. 14-190.9."

District Court Judge Elreta M. Alexander found defendant guilty on all four counts, and from judgments pronounced defendant appealed to Guilford Superior Court, where defendant was tried *de novo* upon the same warrants. The jury returned verdicts of guilty on all four counts, and from judgments imposed defendant appealed to the Court of Appeals. That court reversed. We allowed the State's petition for *certiorari* on 5 March 1974.

The State's evidence tends to show that on the evening of 22 February 1973 four detectives of the Greensboro Police Department Vice Division went to the Rathskeller, a Greensboro night club operated by defendant. Signs at the entrance to the Rathskeller read "Bottomless dancing, nightly," and "Topless dancing, nightly." Another sign read, "This is a private club. Membership is open to anyone willing to abide by house rules. If the nude body offends you, please don't enter."

The detectives entered the premises and found defendant standing behind a cash register near the entrance. Defendant informed the detectives that the admission fee was $5 and that "the girls would take it all off." Each detective signed a note pad, paid $5, and was then admitted. Defendant did not tell them that the Rathskeller was a private club or that they were becoming members by paying $5, nor did he indicate that by paying $5 they were entitled to anything other than admission on that particular evening. They received no membership card or other indicia of membership.

The detectives proceeded to the street-level area of the premises and were seated. For approximately thirty minutes two females danced topless on a raised stage in front of the detectives and some seventy-five other male customers. Then defendant announced that the show was starting downstairs. The customers, including the detectives, went downstairs into a large room. There they observed four females dancing one at a time on a raised stage. While dancing the four females completely disrobed before the audience. Part of their routine is illustrated by the testimony of Officer Heffinger, one of the detectives from the Vice Division:

"Then, Sandra Faye Hall danced again. During the dance, she took off her purple pants. She had no clothing on at all. She got down on the floor on her hands and knees and rotated her hips. . . . After this, Miss Hall turned

with her feet toward the audience, her head toward the back of the stage. She was on her back, and she separated her legs, raising the lower portion of her body and began rotating her hips, during which I could see the pubic area, the vagina lips of her body. She stayed in that position 15 to 30 seconds."

The other three females went through a somewhat similar routine.

At the conclusion of the show, the detectives identified themselves and arrested the girls for indecent exposure. Defendant was also placed under arrest for aiding and abetting indecent exposure.

Defendant did not testify or offer any evidence.

*Attorney General Robert Morgan and Assistant Attorney General Edwin M. Speas, Jr., for the State.*

*Comer and Dailey by John F. Comer for defendant appellee.*

MOORE, Justice.

Before entering a plea in Superior Court, defendant moved "to quash the warrants for that the same are unconstitutional." This motion was denied. On appeal the Court of Appeals reversed saying: "We certainly do not say that G.S. 14-190.9 is unconstitutional. We merely say that it is not applicable to the conduct here. . . . We do hold that the court committed reversible error in failing to grant defendant's motion to quash the warrants in this case."

We agree with the Court of Appeals that the warrants should be quashed but for an entirely different reason—not because G.S. 14-190.9 is not applicable to the facts in this case, but because the warrants on their face are fatally defective. G.S. 14-190.9 provides:

> *"Indecent exposure.*—Any person who shall willfully expose the private parts of his or her person in any public place *and in the presence of any other person or persons, of the opposite sex,* or aids or abets in any such act, or who procures another to perform such act; or any person, who as owner, manager, lessee, director, promoter or agent, or in any other capacity knowingly hires, leases or permits the land, building, or premises of which he is owner, lessee

or tenant, or over which he has control, to be used for purposes of any such act, shall be guilty of a misdemeanor punishable by a fine not to exceed five hundred dollars ($500.00), imprisonment for not more than six months, or both." (Emphasis added.)

[1] One of the essential elements of the offense created by this statute is that the exposure of the private parts be *"in the presence of any other person or persons, of the opposite sex."* The warrants in these cases failed to so charge. Such omission was fatal, and the warrants must be quashed. As stated in *State v. McBane,* 276 N.C. 60, 170 S.E. 2d 913 (1969):

> " 'A valid warrant or indictment is an essential of jurisdiction.' *State v. Morgan,* 226 N.C. 414, 38 S.E. 2d 166; *State v. Thornton,* 251 N.C. 658, 660, 111 S.E. 2d 901, 902. The warrant or indictment must charge all the essential elements of the alleged criminal offense. *State v. Morgan, supra.* Nothing in G.S. 15-153 or in G.S. 15-155 [statutes dealing with certain informalities and defects that do not vitiate a warrant or indictment] dispenses with the requirement that the essential elements of the offense must be charged. *State v. Gibbs,* 234 N.C. 259, 261, 66 S.E. 2d 883, 885, and cases cited; *State v. Strickland,* 243 N.C. 100, 101, 89 S.E. 2d 781, 783."

See generally 4 Strong, N. C. Index 2d, Indictment and Warrant §§ 9, 14 (1968).

Although the warrants must be quashed, we believe the following observations are in order. First, we do not have before us at this time and we express no opinion as to the constitutionality of G.S. 14-190.9. Secondly, we do not agree with the conclusion of the Court of Appeals that G.S. 14-190.9 is not applicable to the particular conduct disclosed by the evidence in this case and that *the only statute* under which defendant could have been charged is G.S. 14-190.1 (a) (2), which deals with the presenting or directing of obscene plays, dances, or other performances.

In its opinion the Court of Appeals stated:

> ". . . The [North Carolina] indecent exposure statute, certainly as it now is written, is simply a codification of the common law crime of exposure of one's private parts, whether intentional or unintentional, in a situation where

the exposure could be viewed by the public. The statute does not contemplate willing viewers, but those who are offended and annoyed by the exposure."

This proposition is without support in either the judicial or statutory development of the law of indecent exposure in this State. Prior to 1907 there was no North Carolina statute dealing with indecent exposure and the common law was in effect. At common law the willful and intentional exposure of the private parts in a public place in the presence of an assembly was a misdemeanor. In an 1835 case this Court stated: "We consider it a clear proposition, that every act which openly outrages decency, and tends to the corruption of the public morals, is a misdemeanor at common law. A public exposure of the naked person, is among the most offensive of those outrages on decency and public morality." *State v. Roper*, 18 N.C. 208 (1835).

In 1907 the General Assembly enacted a statute dealing with exposure of one's private parts and "other indecent exhibitions" and performances. This statute was made a part of an 1885 statute dealing with obscene literature. 1885 Laws of North Carolina, chapter 125, § 1. See also Revisal of 1905, § 3731. The pertinent language in the 1907 Act was as follows:

"... [A]ny person making any public exposure of the person, or other indecent exhibitions, or giving or taking part in any immoral show, exhibition, or performance where indecent, immoral, or lewd dances or plays are conducted in any booth, tent, room, or other place to which the public is invited, or any one who permits such exhibitions or immoral performances to be conducted in any tent, booth, or other place owned or controlled by him, he shall be guilty of a misdemeanor." 1907 Public Laws of North Carolina, chapter 502, § 1.

This statute remained substantially unchanged until 1935. See C.S. § 4348 (1919). In 1935 the General Assembly rewrote North Carolina's statute dealing with indecent exposure and other lewd performances, and also separated it from that portion of the previous statute dealing with obscene literature. 1935 Public Laws of North Carolina, chapter 57, § 1. Except for minor changes by the General Assembly in 1941 and 1969, the 1935 Act on indecent exposure was in effect in this State until 1971. See 1941 Public Laws of North Carolina, chapter 273, § 1; 1969 Session Laws, chapter 1224, § 9. Prior to 1971 this

statute, along with the noted 1941 and 1969 changes, was G.S. 14-190 (1969), and read as follows:

> "*Indecent exposure; immoral shows, etc.*—Any person who in any place wilfully exposes his person, or private parts thereof, in the presence of one or more persons of the opposite sex whose person, or the private parts thereof, are similarly exposed, or who aids or abets in any such act, or who procures another so as to expose his person, or the private parts thereof, or take part in any immoral show, exhibition or performance where indecent, immoral or lewd dances or plays are conducted in any booth, tent, room or other public or private place to which the public is invited; or any person, who, as owner, manager, lessee, director, promoter or agent, or in any other capacity, hires, leases or permits the land, buildings, or premises of which he is owner, lessee or tenant, or over which he has control, to be used for any such immoral purposes, shall be guilty of a misdemeanor. Any person who shall willfully make any indecent public exposure of the private parts of his or her person in any public place or highway shall be guilty of a misdemeanor. Any person violating any provision of this section shall be punishable by a fine not to exceed five hundred dollars ($500.00), imprisonment for not more than six months, or both."

In 1971 the General Assembly repealed G.S. 14-190 (1969) and enacted in its place the present G.S. 14-190.9 (1973 Cumulative Supplement). 1971 Session Laws, chapter 591, §§ 1, 4. In addition to clarifying the language in the previous statute dealing with the exposure of one's private parts in a public place, the 1971 legislation also deleted that portion of the previous statute dealing with immoral and indecent shows, exhibitions, performances, and dances. It was under the 1971 statute, which is fully set out at the beginning of this opinion, that defendant was tried.

[2]   The Court of Appeals stated that although "the conduct promoted by defendant in the case before us could have been subject to a criminal charge under [the pre-1971 indecent exposure statute]," the above-noted deletion made G.S. 14-190.9— the present indecent exposure statute—inapplicable to defendant's conduct. With this we cannot agree. Both the former and present statutes clearly and expressly proscribe the conduct for which defendant was arrested—namely, aiding or abetting other

State v. King

persons in willfully exposing their private parts in the presence of other persons of the opposite sex and in a public place as that term was defined by this Court in *State v. King*, 268 N.C. 711, 151 S.E. 2d 566 (1966). See also *State v. Fenner*, 263 N.C. 694, 140 S.E. 2d 349 (1965).

We note in passing that had the General Assembly not intended for the present statute to cover situations such as that presented by this case, it would have been totally unnecessary to include the language "or any person, who as owner, manager, lessee, director, promoter or agent, or in any other capacity knowingly hires, leases or permits the land, building, or premises of which he is owner, lessee or tenant, or over which he has control, to be used for purposes of any such act." It is inconceivable that circumstances such as those indicated by the words "manager" or "promoter" would ever arise in the case of "ordinary common law indecent exposure," to which the Court of Appeals by its ruling apparently limited the applicability of the present statute.

[3] Furthermore, there is nothing whatsoever in the present or former indecent exposure statutes that in any way requires the viewers of the exposure of one's private parts to be unwilling observers, as stated by the Court of Appeals. For cases in which indecent exposure statutes have been applied by courts in other jurisdictions where the viewers of the exposure were willing observers, see Annot., 49 A.L.R. 3d 1084 (1973) ; Annot., 94 A.L.R. 2d 1353 (1964) ; Annot., 93 A.L.R. 996 (1934). In this regard it might also be noted that the United States Supreme Court in June of 1973 "categorically disapprove[d]" any supposed distinction existing between willing and unwilling viewers of obscenity. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 37 L.Ed. 2d 446, 93 S.Ct. 2628 (1973).

In *State v. Tenore*, 280 N.C. 238, 185 S.E. 2d 644 (1972), a recent case factually similar to the present one, defendant was charged with permitting a female to perform a nude and obscene dance before male persons in the Tempo Lounge over which defendant had control, in violation of a county ordinance. This Court held that the county ordinance under which defendant was charged was void because the State had pre-empted the field by the enactment of G.S. 14-190, the now repealed State-wide indecent exposure statute that prohibited and punished the precise type of conduct prohibited by the county ordinance. Although the conduct for which defendant was charged occurred

prior to the passage of G.S. 14-190.9, and therefore that statute was not directly involved in the case, Justice Lake speaking for the Court did note that G.S. 14-190.9 "deals specifically with the precise conduct with which the defendant is charged in this warrant pursuant to the county ordinance."

G.S. 14-190.9 was enacted by the 1971 General Assembly by passage of chapter 591 of the 1971 Session Laws, and is separate and apart from those statutes dealing with the dissemination of obscenity—G.S. 14-190.1 to 14-190.8—all of which were enacted by passage of chapter 405 of the 1971 Session Laws. G.S. 14-490.9, like its predecessors, simply declares the act of exposing one's private parts in a public place in the presence of persons of the opposite sex, or permitting or aiding or abetting another in doing so, to be a misdemeanor. The statute does not use the term "obscene" and for that matter does not even require the act of exposing one's private parts in public to be "indecent." Since the statute does not involve the concept of "obscenity"— the definition of which has given both the Federal and State courts so much difficulty—we are not concerned with the many and often conflicting decisions attempting to define "obscene" or "obscenity." For a thorough discussion of both the Federal and State decisions on this subject, see *State v. Bryant* and *State v. Floyd,* 285 N.C. 27, 203 S.E. 2d 27 (1974). Rather than being concerned with the concept of obscenity, we need only consider the facts—in this case undisputed—to determine whether they contravene the statute.

The uncontradicted evidence in the present case shows that the four females involved willfully exhibited their private parts to an audience of some seventy-five males in a public place, and that defendant aided and abetted in such exposure. Such conduct constitutes a misdemeanor under G.S. 14-190.9.

Our decision that the warrants must be quashed and the judgments arrested is based solely on the ground that the warrants are fatally defective in that they do not charge all the essential elements of the misdemeanor created and defined by G.S. 14-190.9. Under this holding defendant is not entitled to a discharge. The State may, if it so elects, proceed against defendant upon new and sufficient warrants. *State v. Partlow,* 272 N.C. 60, 157 S.E. 2d 688 (1967) ; *State v. Guffey,* 265 N.C. 331, 144 S.E. 2d 14 (1965) ; *State v. Lucas,* 244 N.C. 53, 92 S.E. 2d 401 (1956) ; *State v. Beasley,* 208 N.C. 318, 180 S.E. 598 (1935).

Additionally, it is important to note that our holding that defendant's conduct violated G.S. 14-190.9 is *not* a ruling that defendant's conduct could not also come under the dissemination of obscenity statutes. To the contrary, we agree with the Court of Appeals that defendant could have been charged under G.S. 14-190.1(a)(2) (1973 Cumulative Supplement). Although this statute was amended by chapter 1434, § 1, of the 1973 Session Laws (2nd Session, 1974), effective 1 July 1974, this amendment did not affect G.S. 14-190.9 under which defendant was tried.

For the reasons stated the decision of the Court of Appeals is affirmed, and the cases are remanded to the Court of Appeals with direction for that court to remand to the Superior Court of Guilford County, Greensboro Division, for such further action as the State may elect in accordance with this opinion.

Modified and affirmed.